[Civ. No. 20245. Second Dist., Div. One. June 13, 1955.]

Estate of JUDITH LINDA HOWARD, a Minor. JUDITH KELLY HOWARD, Respondent, v. LINDSAY COLEMAN HOWARD, Appellant.

[Civ. No. 20359. Second Dist., Div. One June 13, 1955]

Estate of JUDITH LINDA HOWARD, a Minor. LINDSAY COLEMAN HOWARD, Appellant, v. JUDITH KELLY HOWARD, Respondent.

Franklin W. Peck for Appellant.

Edward M. Raskin for Respondent.

DRAPEAU, J.—Lindsay Coleman Howard, father of Judith Linda Howard, a minor, was appointed guardian of her estate on February 8, 1946. The estate consisted of a ring and a necklace bequeathed to the minor by the paternal grandmother. It had an appraised value of $115,000. Judith Kelly Howard, mother of the little girl, gave her written consent to the guardianship. In July of that year, the probate court made its order authorizing guardian to withdraw the jewelry from a sealed deposit box and offer it for sale. Sale to be made subject to confirmation by the court.

Thereafter, guardian made his return of sale of the jewelry to John E. Thoroughgood for the sum of $75,000 cash. Pursuant thereto, order confirming sale in Thoroughgood was made after hearing on February 28, 1947. Guardian's first account current rendered in September, 1948, recited the investment of proceeds of the sale in United States government bonds.

In June of 1952, the Howards were divorced. Shortly thereafter, Mrs. Howard initiated the instant proceeding under section 1580 of the Probate Code to remove Mr. Howard, as guardian of their minor daughter, and for appointment of a new guardian.

The petition avers, among other things, that guardian told petitioner that it would be advisable to sell the jewelry to avoid payment of personal property taxes which ran around $3,400 per annum. Petitioner objected to doing anything that would impair the minor's title to the jewelry. However, guardian assured her that the jewelry would not really be sold; that he had legal advice to the effect that he could put up the money used in the purchase and that Mr. Thoroughgood could act as an intermediary in an "apparent sale." He also told her that she "could hold the jewelry for the minor," and in that way "Judy would have both the jewelry and the money."

Guardian admits that he did put up the $75,000 and purchased the jewelry using Mr. Thoroughgood as a dummy. But he attempts to excuse his actions on the ground that petitioner had full knowledge of the circumstances surrounding the sale and consented thereto.

In the instant proceeding, guardian is charged with waste and mismanagement of the estate and abuse of his trust: first, because he sold the jewelry which was appraised at $115,000 for $75,000; and second, by purchasing it himself he acquired an adverse interest in his daughter's estate.

He is also charged with having fraudulently and improperly concealed and withheld from the court the true facts concerning the sale. Particularly, that he and not Mr. Thoroughgood was in fact the purchaser. And that thereby, he demonstrated his incapacity to perform the duties of guardianship in a suitable manner.

Guardian's answer admits that he agreed to purchase the jewelry himself because petitioner opposed a sale to strangers for $60,000. He also admits that he advanced $75,000 to Mr. Thoroughgood, who put in a bid for the jewelry at

that figure, and that he filed a return of sale naming Thoroughgood as the purchaser and petitioned for confirmation thereof. Guardian also admits in his answer that he commenced an action in the superior court in his individual capacity on July 25, 1952, claiming title to and the right to possession of the jewelry. And he denies that the jewelry "in truth or in fact is now the property of and belongs to said minor."

The trial court found that guardian's return of sale and petition for confirmation of the sale to John E. Thoroughgood for $75,000 cash was "verified under oath by said Guardian."

Also that "It is true that said guardian . . . fraudulently and improperly concealed and withheld from the court and failed to disclose . . . that the guardian, and not John E. Thoroughgood, was in fact the purchaser of said jewelry, and that the consideration for the purchase . . . was paid by said guardian and not by said John E. Thoroughgood," who never had possession of the jewelry and was at all times acting solely as the agent for guardian. That guardian delivered the jewelry to petitioner, who placed it in a safe deposit box held jointly by said parties.

The court further found that in March, 1952, guardian asserted that the title and right to possession of the jewelry was vested in him personally and not in said minor. On July 3, 1952, he demanded possession thereof from petitioner. Shortly thereafter, he commenced an action to recover said property from petitioner. Petitioner, as guardian ad litem of the minor, filed an answer claiming that said minor was the lawful owner of said jewelry.

In accordance with the foregoing, the court found that said guardian (1) had mismanaged said estate and had abused his trust; (2) had demonstrated his incapacity to perform his duties in an suitable manner; and (3) had acquired an interest adverse to the faithful performance of his duties as guardian, within the meaning of subsections 1, 3 and 5, respectively, of section 1580 of the Probate Code.

Lindsay Coleman Howard appeals from the judgment which followed, removing him as guardian of the estate of the minor, and appointing a new guardian.

Mr. Howard has also appealed from an order denying his motion to disaffirm and vacate the sale of the jewelry.

Both appeals have been consolidated for decision by this court and will be disposed of by this opinion.

Appellant urges that the trial court abused its discretion in ordering his removal as guardian in that it failed in the asserted exercise of its *sound discretion* to take into account:

1. Respondent petitioner's participation in the sale;

2. The good faith and generosity of the guardian in administering the ward's estate;

3. The benefits accruing to the ward as result of such generosity of the guardian.

Also, that the evidence fails to support findings of the trial court:

4. That guardian fraudulently and improperly concealed and withheld information from the court;

5. That he mismanaged the estate and abused his trust;

6. That he evidenced his incapacity to perform his duties suitably;

7. That he acquired an interest adverse to the faithful performance of his duties as guardian;

8. That the legal effect of the trial court's findings of fact viewed in the light of its memorandum of decision makes the sale of the jewelry to guardian absolutely void and not voidable, and therefore the court erred in denying his motion made after judgment to disaffirm the entire transaction.

██ "Since the probate court retains continuing supervisory jurisdiction over guardianship matters, the removal of a guardian for any of the reasons specified in the code (Prob. Code, § 1580) rests within the broad discretion of the court. . . ." *Guardianship of Riley,* 72 Cal.App.2d 742, 747 [165 P.2d 555].

In discussing the attributes of judicial discretion, this court in *Gossman* v. *Gossman,* 52 Cal.App.2d 184, 194 [126 P.2d 178], stated: "To exercise that power all the material facts in evidence must be both known and considered, together also with the legal principles essential to an informed, intelligent, and just decision. On that basis, then, and guided thereby, it gives latitude to the trial judge to express his own convictions in the declaration of rights and application of remedies. . . .

"The term 'judicial discretion' was defined in *Bailey* v. *Taaffe* (1866), 29 Cal. 422, 424, as follows: 'The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia,* but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.' "

It is clear from the record that respondent was opposed

to the sale from the beginning, but was persuaded by appellant that it was the proper. thing to do. He told her he had discussed the matter with his attorney (who was not present counsel for appellant) and said "we have figured out a way whereby we can sell it (the jewelry) and still keep it for Judy."

As stated in the early case of *Page* v. *Naglee,* 6 Cal. 241, 245: "It is a familiar principle in law, that one who is a trustee, or who stands in a situation of trust and confidence, cannot purchase or deal with the subject of the trust, neither can he purchase debts due, to be paid out of the trust estate, nor place himself in an attitude antagonistic to the trust."

Appellant, as the guardian of his daughter, is held to strict adherence to that rule. What respondent knew or consented to does not excuse him. Moreover, as hereinbefore noted, the evidence discloses that appellant persuaded respondent that the sale of the jewelry was best for the minor.

With reference to appellant's good faith and his so-called generosity resulting in alleged benefits to the minor, the following language from *Wickersham* v. *Crittenden,* 93 Cal. 17, 29 [28 P. 788], appears particularly applicable to the instant situation:

"For the reason that it is against public policy to permit persons occupying fiduciary relations to be placed in such a position that the influence of selfish motives may be a temptation so great as to overpower their duty and lead to a betrayal of their trust, the rule is unyielding that a trustee shall not, under any circumstances, be allowed to have any dealings in the trust property with himself, or acquire any interest therein. *Courts will not permit an investigation into the fairness or unfairness of the transaction, or allow the trustee to show that the dealing was for the best interest of the beneficiary. . . .*" (Emphasis added.)

Again in *Pacific Vinegar etc. Works* v. *Smith,* 145 Cal. 352, 365 [78 P. 550, 104 Am.St.Rep. 442], it was said: "The great purpose of the law is to secure fidelity in the agent. When one undertakes to deal with himself in different capacities—individual and representative—there is a manifest hostility in the position he occupies. His duty calls upon him to act for the best interests of his principal; his self-interest prompts him to make the best bargain for himself. Humanity is so constituted that when these conflicting interests arise the temptation is usually too great to be over-

come, and duty is sacrificed to interest. In order that this temptation may be avoided, or, if indulged in, must be at the peril of the trustee, it has been wisely provided that the trustee shall not be permitted to make or enforce any contract arising between himself as trustee and individually with reference to any matter of the trust, *nor will the court enter into any examination of the honesty of the transaction.*" (Emphasis added.)

See also Restatement, Trusts, section 170, comment B, where it is stated: "It is immaterial that the trustee acts in good faith in purchasing trust property for himself, and that he pays a fair compensation."

It is clear from the record herein that there was no abuse of discretion on the part of the trial judge in arriving at his conclusion.

■ The failure of appellant in his petition for confirmation of the sale to disclose to the court that he, and not John E. Thoroughgood, was in fact the purchaser of the guardianship property, was a fraud upon the court. By such failure, appellant withheld a material fact from the court. Moreover there can be no justification for appellant's filing a verified petition under oath alleging that John E. Thoroughgood was the purchaser, when in truth and fact appellant guardian was the purchaser.

A trustee who acquires any interest adverse to the interest of his beneficiary in the subject of the trust, "must immediately inform the latter thereof, and may be at once removed." (Civ. Code, § 2233.) And, the violation of the provisions of the foregoing section "is a fraud against the beneficiary of the trust." (Civ. Code, § 2234.)

Without going into detail, suffice it to say that the evidence adduced at the trial herein is amply sufficient to support the findings and the judgment.

In his appeal from the order denying his motion to disaffirm the sale, appellant urges that the sale was void and therefore the court's ruling on the motion was error.

■ "It is a rule of universal recognition that a guardian, in purchasing or otherwise acquiring the property of his ward, violates the duty imposed by the fiduciary character of his position. Such a transaction, whether made directly to the guardian or through another, is voidable at the suit of any proper party in interest." 25 American Jurisprudence 131, section 210.

At the time the motion was denied, the court stated: "This

motion comes on by the same person whom the court has found did defraud the court, made representations falsely to the court, and still claims the ownership of the jewelry, and the court is without the benefit of a disinterested guardian to determine whether or not it is for the best interest of the minor to rely on the sale that was made, although it was some $40,000 less than the appraised value, or whether the sale should be vacated.''

The order of denial was made ''without prejudice to a further motion made by a disinterested guardian to vacate the sale.''

For the reasons stated, the judgment and the order appealed from are, and each of them is, affirmed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied July 5, 1955, and appellant's petition for a hearing by the Supreme Court was denied August 11, 1955.