Filed 7/9/21  Mahanuntawong v. Kittithanyaphak CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SIRINARD MAHANUNTAWONG,<br><br>　　Plaintiff, Cross-defendant, and Respondent,<br><br>v.<br><br>PHAWEE KITTITHANYAPHAK ET AL.,<br><br>　　Defendants, Cross-complainants, and Appellants. | A158610<br><br>(Alameda County Super. Ct. No. RG18889990) |

Plaintiff Sirinard Mahanuntawong (Sirinard) and defendants Phawee Kittithanyaphak (Phawee) and Tassaneeya Pandey (Tassaneeya) entered an agreement to operate a restaurant through a limited liability corporation.[1] Several disputes about the business arose, and Phawee and Tassaneeya (collectively, appellants) expelled Sirinard from the corporation.  After a bench trial, the trial court found in Sirinard's favor on her claims for fraud and breach of fiduciary duty and entered a judgment rescinding the operating agreement and awarding restitution to Sirinard of $96,000, the amount of her investment.

---

[1] Since the parties previously indicated a "strong preference" to be referred to by their first names, we do so in this opinion.

1

On appeal, appellants contend that the trial court erred by finding they committed fraud and by rejecting their affirmative defense of unclean hands and their cross-claim for breach of fiduciary duty. They also claim that the court incorrectly calculated the restitution award. We affirm.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

This case is about, as the trial court put it, "a restaurant deal that went bad." The story began when Sirinard hired Phawee to work in a San Francisco restaurant Sirinard owned. The two became friends and in 2017 decided to purchase a Pleasanton restaurant and reopen it as "EaThai." They ran their business through a limited liability corporation named Lux Thai, LLC (Lux Thai), which was a pre-existing entity that Phawee and Tassaneeya, a close friend of Phawee's family, had used for an earlier business enterprise. Before EaThai opened, Sirinard and Phawee made capital and other investments in the business. The trial court found that Sirinard contributed $96,000 to the venture, Phawee contributed $75,200, and both still owed money to the restaurant's former owner.

A core dispute in this case involved the percentage of ownership interests in Lux Thai to which the parties agreed. A written operating agreement signed in late March 2017 set forth a 60-35-5 percent ownership split between Phawee, Sirinard, and Tassaneeya respectively. Sirinard testified, however, that she and Phawee agreed to a 50-50 ownership split, and the operating agreement's split was meant to be temporary. Specifically, Sirinard testified the temporary agreement was proposed because Phawee wanted to be a 60 percent owner on paper "to satisfy requirements for [her] to qualify for an E2 investment visa for immigration purposes," and she wanted Tassaneeya, who had not invested any money in the venture, to be a

2

5 percent owner on paper to reflect that Tassaneeya guaranteed the restaurant's lease.

Although "EaThai quickly became a success," the parties' relationship deteriorated just as swiftly. Sirinard testified that Phawee wrongly used funds from the Lux Thai account to pay for a residential lease for her and her mother, which Sirinard opposed. Not long after the restaurant opened, the police were called as a result of conflicts between Phawee's mother and Sirinard. Phawee, her mother, and her mother's partner were asked to leave the premises. After this incident, Phawee stopped processing EaThai's payroll and prevented Sirinard from accessing Lux Thai's bank accounts. Subsequently, "Phawee and Tassaneeya, acting as the purported majority owner/members of Lux Thai, . . . expelled Sirinard as a member," claiming that Sirinard had skimmed money from the nightly receipts.

This suit followed. In the operative complaint, Sirinard brought claims for involuntary dissolution of Lux Thai, an accounting, declaratory relief, conversion, breach of fiduciary duty, fraud, and defamation. Appellants denied the allegations, asserted affirmative defenses—including one based on the doctrine of unclean hands—and filed a cross-complaint alleging that Sirinard breached her fiduciary duties to them.

After a bench trial, the trial court issued a 13-page, single-spaced tentative ruling that eventually became its final order. The court found in Sirinard's favor on her claims for fraud, breach of fiduciary duty, and declaratory relief, but it concluded she failed to prove her claims for conversion and defamation. It also found that appellants had not proved their affirmative defenses or cross-claim.

The trial court granted Sirinard relief, albeit not everything she had sought. The court ruled that she was entitled to rescission, based on

3

appellants' "breaches of fiduciary duty and fraud in the inducement," and "to recover the capital she invested in Lux Thai." It therefore awarded Sirinard $96,000 and her costs of suit.

The trial court denied Sirinard's requests for lost income, a portion of EaThai's ongoing profits, and punitive damages. Although the court allowed Sirinard essentially to "walk away from the [60/35/5] Operating Agreement" by rescinding it, the court declined to dissolve Lux Thai or order an accounting while retaining the right to order such relief if necessary to enforce the judgment. Since the agreement was rescinded, the court also declined to reinstate Sirinard's interest in Lux Thai. Finally, the court declared that Sirinard was "not responsible for the debts or liabilities of Lux Thai, LLC, including but not limited to any further sums that may be due to the former owner of [the restaurant]."

None of the parties opposed or sought to correct or clarify the tentative decision. Judgment was entered on August 30, 2019, and a notice of its entry was sent to the parties on September 3. The following month, on October 2, appellants filed a motion to vacate and/or amend the judgment, which Sirinard opposed. A week later, appellants filed a notice of appeal. Before the scheduled hearing on the motion to vacate, appellants' counsel sent a letter to the trial court suggesting it lacked jurisdiction to hear the motion in light of the appeal. The court thereafter dropped "the motion from the calendar as withdrawn by the moving parties," and no party objected.

## II.
### DISCUSSION

*A.    Substantial Evidence Supports the Trial Court's Finding of Fraudulent Inducement.*

Appellants claim that the trial court erred by concluding they fraudulently induced Sirinard to enter the operating agreement.  We are not persuaded.[2]

### 1.    Standard of review

In conducting our review, we presume the trial court's judgment is correct.  The general rule is that " ' "[a]ll intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown." ' " (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140.)  Accordingly, " 'in reviewing a judgment based upon a statement of decision following a bench trial, "any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision. [Citations.]" [Citation.]  In a substantial evidence challenge to a judgment, the appellate court will "consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]" [Citation.]  We may not reweigh the evidence and are bound by the trial court's credibility determinations.  [Citations.]  Moreover, findings of fact are liberally construed to support the judgment.' " (*Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 765.)

---

[2] In light of this conclusion, we need not address Sirinard's contention, which she reiterated at oral argument, that the trial court's unchallenged finding that appellants breached their fiduciary duties provides us with an independent basis on which to affirm the judgment.

If a party does not bring "omissions or ambiguities in the statement" of decision to the trial court's attention, "that party waives the right to claim on appeal that the statement was deficient in these regards, and hence the appellate court will imply findings to support the judgment." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133–1134, citing Code of Civ. Proc., § 634.) In such circumstances, we "will infer the trial court made every implied factual finding necessary to uphold its decision, even on issues not addressed in the statement of decision. The question then becomes whether substantial evidence supports the implied factual findings." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 48.)

Because we presume that the record contains evidence sufficient to support the judgment, an appellant has the "burden to demonstrate otherwise." (*Baxter Healthcare Corp. v. Denton* (2004) 120 Cal.App.4th 333, 368.) The appellant is therefore required to provide a summary of all the evidence, not merely the appellant's own evidence, with citations to the record. (Cal. Rules of Court, rule 8.204(a)(1)(C); see *Bernard v. Hartford Fire Ins. Co.* (1991) 226 Cal.App.3d 1203, 1205.) In other words, the appellant must affirmatively demonstrate that the evidence is insufficient. (*Baxter,* at p. 368.)

Appellants argue that we should review the trial court's fraud ruling de novo, citing *Crocker National Bank v. City & County of San Francisco* (1989) 49 Cal.3d 881, 888. The case does not support their argument. *Crocker* held that de novo appellate review of a mixed question of fact and law was proper. (*Ibid.*) Here, however, appellants claim that (1) Sirinard "failed to prove justifiable reliance" and (2) the evidence failed to show "that Tassaneeya actually committed fraud." These claims require us to review straightforward factual determinations explicitly or implicitly made by the

6

trial court, not questions of law, and *Crocker* reiterates the well-established rule that such findings are "reviewed under the substantial-evidence test." (*Ibid.*)

### 2. Analysis

"The elements of fraud are (a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage." (*Hinesley v. Oakshade Town Center* (2005) 135 Cal.App.4th 289, 294.) "Fraud in the inducement is a subset of the tort of fraud." (*Ibid.*) Fraud in the inducement occurs when the promisor knows what she is signing but her consent is induced by fraud. (*Id.* at pp. 294–295.) Mutual assent is present and a contract is formed, but the contract is voidable by virtue of the fraud. (*Id.* at p. 295.)

Initially, we reject appellants' claim that the trial court "did not find that Tassaneeya actually committed fraud." Appellants point out that the court's order states, without mentioning Tassaneeya, that "Phawee fraudulently induced Sirinard to sign the Operating Agreement." But the order also states that (1) "Sirinard proved her claims for fraud and breach of fiduciary duties against *Defendants* by a preponderance of the evidence" and (2) that "[t]he Court has found that *Defendants* fraudulently induced Plaintiff to enter into their agreement to re-tool Lux Thai . . . as the holding company for the parties' shared restaurant business." (Italics added.) These statements clearly convey the finding that Tassaneeya also committed fraud. And even if there had been any ambiguity in the court's order, appellants forfeited their challenge by not seeking clarification of the tentative decision below. (See *In re Marriage of Arceneaux, supra,* 51 Cal.3d at pp. 1133–1134.)

7

We are also unpersuaded by the claim that Sirinard failed to prove justifiable reliance.  Appellants argue that "[t]he alleged oral side agreement was that, if [Sirinard] assisted in defrauding the immigration authorities by signing the false Operating Agreement, she would actually become half owner of Lux Thai," and "[i]t is manifestly unreasonable to rely on representations based on adherence to an illegal agreement."  But the trial court did not find that any such agreement existed, and appellants point to *no* evidence of an agreement to award Sirinard a 50 percent share only if she signed the operating agreement.  Rather, Sirinard testified that, from the outset, Phawee proposed that they would be 50-50 equal partners in the business.  Sirinard explained that she agreed to go forward with the business venture because she and Phawee would invest in, own, and control the business equally.  Moreover, Sirinard testified that notwithstanding the operating agreement's 60/35/5 percent split, she was to remain in fact a 50 percent owner of the business.  This testimony was corroborated by an email that Phawee sent to Sirinard reaffirming that their 50-50 deal was the "fact" and the 60/35/5 percent arrangement was temporary.  Thus, there was ample evidence of an oral agreement "to split the business equally," and appellants fail to explain why Sirinard did not justifiably rely on it.

Appellants next argue that the finding of fraudulent inducement cannot stand because Sirinard "testified that the 60/35/5 arrangement was supposed to be temporary until Phawee got her business visa," meaning Sirinard "admitted at trial that she was not relying on owning a half interest in Lux Thai immediately; she knew that she actually was getting a 35% stake, which would be adjusted once Phawee got her business visa."  Again, however, appellants' position is thoroughly undermined by the evidence recited above, which constitutes substantial evidence that Sirinard was

always supposed to have a 50 percent interest in Lux Thai. As the trial court found, Sirinard was "fraudulently induced . . . to sign the Operating Agreement with the understanding that [she] would own the LLC 50/50 notwithstanding the manner in which [the parties] were documenting the deal differently." Thus, appellants' arguments involving justifiable reliance fail.

Finally, appellants claim that the record lacks evidence that Tassaneeya ever made "any sort of representation" or failed to disclose relevant facts, meaning she did not commit fraud. The trial court could have reasonably inferred, however, that Tassaneeya was aware that her five percent interest under the operating agreement she signed was "fake," as she did not actually invest in the business, and that Sirinard owned more of the business than the agreement indicated. And by subsequently voting to expel Sirinard from Lux Thai, Tassaneeya took advantage of this false interest for her own benefit. Thus, the court could have also reasonably inferred that Tassaneeya, in concert with her close family friend Phawee, fraudulently induced Sirinard to enter the operating agreement by failing to disclose that appellants did not intend to honor Sirinard's oral agreement with Phawee. In short, there was substantial evidence to support the court's finding that Tassaneeya was also liable for fraud.

B. *The Trial Court Did Not Err in Rejecting Appellants' Defense of Unclean Hands and Cross-claim for Breach of Fiduciary Duty.*

Appellants also claim that the trial court was required, as a matter of law, to rule in their favor on their defense of unclean hands and their cross-claim that it was Sirinard, not they, who breached fiduciary duties. Again, we are not persuaded.

The defense of unclean hands " 'demands that a plaintiff act fairly in the matter for which [the plaintiff] seeks a remedy.' " (*Michaels v. Greenberg*

9

*Traurig, LLP* (2021) 62 Cal.App.5th 512, 533.) It "applies when it would be unfair for the plaintiff to profit from his or her wrongdoing, even assuming the defendant might otherwise be liable, at least in part, for the losses sustained by the plaintiff." (*Stine v. Dell'Osso* (2014) 230 Cal.App.4th 834, 844–845.) " 'The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach.' " (*Green Valley Landowners Assn. v. City of Vallejo* (2015) 241 Cal.App.4th 425, 441.)

In their briefing, appellants offer a litany of reasons why Sirinard had unclean hands and breached her fiduciary duties to them. These include contentions that Sirinard signed the 60/35/5 percent operating agreement for the illegal purpose of helping Phawee obtain a visa, stole money from the business in various ways, made improper and illegal payments through the payroll, conspired to embezzle money from Phawee's family, inappropriately paid a contractor, and established a system to siphon money at the point of customer sales.

To the extent these claims were raised below, the trial court expressly or implicitly rejected them. It found there was no or insufficient evidence to prove that Sirinard skimmed cash from the restaurant, paid a general contractor for unnecessary or incomplete work, diverted funds intended for the contractor to her personal accounts, breached a duty in issuing payroll checks, or "did anything wrong in temporarily closing the restaurant." And it ruled that "[n]one of [the] further theories [of Sirinard's alleged wrongdoing] hold any water," including appellants' claim involving an alleged conspiracy by Sirinard to steal from Phawee's aunt.

Appellants fail to grapple with the applicable standard of review in arguing that the trial court was bound to rule in their favor. Again, they

10

argue that review is de novo, but most of the court's findings were based on contested evidence or depended on credibility determinations. Again, we must resolve all evidentiary conflicts and accept all reasonable inferences in a manner supporting the court's decision. (See *Cuiellette v. City of Los Angeles, supra,* 194 Cal.App.4th at p. 765.) While appellants cite some testimony they believe supports their theories, they have failed to sustain their burden of "provid[ing] a summary of all of the evidence, not merely [their] own evidence, with citations to the record." (*Carrington v. Starbucks Corp.* (2018) 30 Cal.App.5th 504, 518.) Furthermore, " '[w]here, as here, the judgment is against the party who has the burden of proof, it is almost impossible for [the party] to prevail on appeal by arguing the evidence compels a judgment in [the party's] favor. That is because unless the trial court makes specific findings of fact in favor of the losing [party], we presume the trial court found [that party's] evidence lacks sufficient weight and credibility to carry the burden of proof. [Citations.] We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence.' " (*Patricia A. Murray Dental Corp. v. Dentsply Internat., Inc.* (2018) 19 Cal.App.5th 258, 270.)

In particular, appellants fail to persuade us that Sirinard's admitted conduct required the trial court to apply the doctrine of unclean hands. Appellants point out that Sirinard admitted to engaging in some questionable behavior, such as going along with the 60/35/5 percent operating agreement to help Phawee obtain a visa. But the doctrine of unclean hands " 'is not a legal or technical defense to be used as a shield against a particular element of a cause of action. Rather, it is an equitable rationale for refusing a plaintiff relief where principles of fairness dictate that the plaintiff should not recover, regardless of the merits of [the plaintiff's] claim. It is available to protect the court from having its powers used to bring about an inequitable

11

result in the litigation before it.' [Citation.] By the same token, ' "[w]henever an inequitable result would be accomplished by application of the 'unclean hands' doctrine the courts have not hesitated to reject it." ' " (*Stine v. Dell'Osso*, *supra*, 230 Cal.App.4th at p. 844.) The court rejected the vast majority of appellants' allegations of Sirinard's wrongdoing and determined that any impropriety by Sirinard did not warrant denying rescission of the parties' business relationship, concluding that it would be "highly inequitable" to deny her relief. Appellants offer us no valid reason for disturbing this conclusion.

> C.  *Appellants Forfeited Their Argument that the Trial Court Erred in Calculating the Amount of the Restitution Award.*

Finally, appellants argue that the trial court miscalculated the amount of restitution. Specifically, they argue that the court wrongly included "$25,000 of [their] money that [Sirinard] admitted having received; . . . overstated the amount that [Sirinard] actually paid to [a contractor; and] improperly credited [Sirinard] with double payments to the contractor that she admitted having made." Sirinard responds that appellants forfeited their argument by failing to bring the alleged errors to the attention of the court below. We agree with Sirinard.

"[A] failure to move for a new trial ordinarily precludes a party from complaining on appeal that the damages awarded were either excessive or inadequate, whether the case was tried by a jury or a court without a jury." (*Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 122.) This rule applies when "the ascertainment of the amount of damage requires resolution of conflicts in the evidence or depends on the credibility of witnesses," although it does not preclude a party from raising legal errors "such as erroneous rulings on admissibility of evidence, errors in jury instructions, or failure to apply the proper legal measure of

damages." (*Ibid.*)  The reason for this rule is that parties who "first challenge the damage award on appeal, without a motion for a new trial, . . . unnecessarily burden the appellate courts with issues which can and should be resolved at the trial level." (*Schroeder v. Auto Driveway Co.* (1974) 11 Cal.3d 908, 919.)  "[T]he trial court is in a far better position than the Court of Appeal to evaluate the amount of damages awarded in light of the evidence presented at trial." (*County of Los Angeles v. Southern Cal. Edison Co.* (2003) 112 Cal.App.4th 1108, 1121.)

The alleged errors in the restitution award involve evidentiary issues and credibility questions, not errors of law.  Accordingly, appellants forfeited these claims of error by not bringing them to the attention of the trial court. While it is true that appellants filed a notice of motion to vacate and/or amend the judgment in which they objected to the calculation of the restitution award, the motion was untimely because it was filed a month after the judgment was entered and served on the parties long past the applicable 15-day period.  (Code Civ. Proc., § 659, subd. (a)(2).)  In any event, the motion was deemed withdrawn after appellants suggested to the court that it lacked jurisdiction to proceed in light of their appeal.  Thus, appellants forfeited their challenges to the restitution award by not allowing the trial court to consider those claims in the first instance.

III.
DISPOSITION

The judgment is affirmed.  Sirinard is awarded her costs on appeal.

13

_____

Humes, P.J.


WE CONCUR:



_____

Margulies, J.



_____

Sanchez, J.


*Mahanuntawong v. Kittithanyaphak et al.* (A158610)


14