Filed 2/27/23  Conservatorship of J.C. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| Conservatorship of the Person of J.C. | 2d Civil No. B317869 (Super. Ct. No. 21PR00055) (Santa Barbara County) |
| P.M., as Conservator, etc., et al., <br><br>    Petitioners and Respondents, <br><br> v. <br><br> A.C., <br><br>    Objector and Appellant. | |

A.C. appeals an order of the trial court terminating her as coconservator of the person of J.C., a disabled adult.  The court had suspended A.C. as a coconservator before it issued the termination order.  We conclude, among other things, that the court did not abuse its discretion in terminating her as coconservator.  We affirm.

FACTS

A.C. was a coconservator for the person of J.C., her disabled adult son. B.R., J.C.'s father, was also a coconservator. P.M. is the current conservator. The conservatorship petition was filed in the Los Angeles County Superior Court. An order appointing conservators for this "limited conservatorship" was initially entered in 2004. Additional conservatorship proceedings took place in the Santa Barbara County Superior Court. Our reference to the trial court in this opinion refers to the judges of these two county superior courts who issued the relevant orders in this case.

In August 2019, while on a hiking trip, A.C. sprayed J.C. with "pepper gel" in his face. She claimed she acted in self-defense. A county sheriff's department report of this incident concluded that A.C. was "acting out of anger and not self-defense." The case was referred to the district attorney, but no criminal prosecution of A.C. was initiated. The trial court appointed counsel for J.C.

*The May 15, 2020, Evidentiary Hearing*

In April 2020, J.C.'s appointed counsel declared A.C. was "interfering with" J.C.'s care, and J.C.'s caregivers agreed that her interference was "detrimental" to J.C. A.C. over medicated J.C. in violation of his doctors' orders, threw water in his face, took his medicine for her personal use, and broke into his medicine box.

The trial court issued an order to show cause regarding termination of A.C. as a coconservator. The court conducted an evidentiary hearing on May 15, 2020, where A.C. testified. The court suspended A.C. as a coconservator and ordered her not to interfere with J.C.'s care.

2

*J.C.'s Counsel's August 2020 Report to the Trial Court*

J.C.'s counsel filed a report with the trial court and declared that A.C. violated the court's order that she not interfere with J.C.'s health care. A.C. violated the order by sending "threatening and strange" e-mails to J.C.'s caregivers. The court had previously ordered her not to initiate contact with J.C.'s caregivers. A.C. violated that order by initiating "a barrage" of e-mails to the medical staff. Counsel requested A.C.'s "powers should be terminated."

*The November 5, 2020, Hearing*

Counsel for conservator B.R. sought an amended order and declared A.C. "is harming conservatee [J.C.] by violating the Court's Order" by inferring with J.C.'s medical treatment. Counsel requested an order to limit A.C.'s visits with J.C. and her contacts with his doctors. A.C. filed an opposition. The trial court held a hearing on November 5, 2020, and issued orders limiting A.C.'s contacts with J.C. and his doctors. The court warned A.C. that noncompliance with its orders could lead to contempt charges.

*The February 9, 2021, Order*

In February 2021, counsel for B.R. requested another court order. Counsel declared that A.C. "is still harming the conservatee . . . by violating the Court's Order." A.C. "continues to harass and disparage staff" at J.C.'s care facility. Counsel attached a medical report from a psychiatrist indicating that A.C. was interfering with J.C.'s health care by "berating him" and "turning him against" his caregivers.

On February 9, 2021, the trial court issued an order preventing A.C. from being present at A.C.'s health care appointments. It found good cause to temporarily suspend all

contact and telephone calls between A.C. and J.C. because of her conduct.

*The Restraining Order*

In the same month, coconservator B.R. claimed A.C. sent him threatening messages. He obtained a restraining order against A.C. prohibiting her from sending threatening messages to him regarding J.C.'s care.

*Motions to Terminate A.C. as Coconservator*

In July 2021, J.C.'s counsel filed a report with the trial court and declared that A.C. had a pattern of berating J.C., bullying caregivers, aggressive behavior against coconservator B.R., harassing medical providers, and "ignoring the orders of the court." Counsel requested an order terminating A.C. as coconservator.

Counsel for coconservator B.R. filed a declaration and requested summary removal of A.C. as coconservator under Probate Code section 2655 for violating the trial court's orders.[1] A.C. did not file a declaration to respond to these declarations.

On July 29, 2021, the trial court held a hearing. The court said that it wanted the court investigator to "make another effort to speak to [A.C.]"; that there was enough evidence in the record to support the termination of A.C. as coconservator without taking additional evidence. A.C. did not attend that hearing. On the issue of A.C.'s noncompliance with court orders, A.C.'s counsel said, "There was some period of difficulty, but I think we're past that." The court set a hearing for August 26, 2021.

At that August hearing, counsel for the conservators requested the trial court "to remove [A.C.] as co-conservator."

---

[1] All statutory references are to the Probate Code unless otherwise stated.

A.C. was not present. A.C.'s counsel requested the court to schedule an evidentiary hearing. The court declined. It said, "The Court . . . has received a wealth of information. And I think that taking it further, or to an evidentiary hearing, does not serve a purpose and is not in the conservatee's best interest because we've been round and round here on this issue. I am going to go ahead at this point and remove [A.C.]."

## DISCUSSION

### *The Disentitlement Doctrine*

P.M. contends A.C. is not entitled to appeal because of the disentitlement doctrine. He claims she did not comply with the trial court's orders and she should be denied appellate relief.

"It is well settled that this court has the inherent power to dismiss an appeal by any party who has refused to comply with orders of the trial court." (*TMS, Inc. v. Aihara* (1999) 71 Cal.App.4th 377, 379.) The disentitlement doctrine is not limited to violation orders that a party has appealed. (*In re E.M.* (2012) 204 Cal.App.4th 467, 477.) It extends to "cases in which the appellant has violated orders other than the one from which the appeal has been taken." (*Ibid.*)

The findings from the November 5, 2020, hearing and the February 9, 2021, order in favor of B.R. support P.M.'s claim that A.C. violated the trial court's May 15, 2020, orders. In a December 11, 2020, order, the court warned A.C. that noncompliance with the court's orders could lead to her being held in contempt. A.C. contends the doctrine does not apply because she did not engage in "felonious behavior." But the doctrine is not so limited. (*TMS, Inc. v. Aihara, supra,* 71 Cal.App.4th at pp. 379-380.) Here A.C.'s disobedience was repetitive and involved the conservatee's health care. In a phone

5

message to B.R., A.C. demonstrated her contempt for the court with these words: "I don't care what the fucking Judge says . . . ." (*TMS, Inc.*, at p. 379.) But even if the disentitlement doctrine did not apply, the result would not change.

*Inadequate Record on Appeal*

P.M. contends A.C. has not provided an adequate record on appeal. We agree.

The appellant has the burden to produce an adequate record. Where the record is incomplete, we must presume that the trial court's rulings are supported by the missing portions of the record. (*Null v. City of Los Angeles* (1988) 206 Cal.App.3d 1528, 1532.) We may not presume error on an incomplete record. (*Ibid.*)

A.C. contends there was no admissible evidence to support her termination as coconservator. But a major part of this case involves the May 15, 2020, hearing where the trial court suspended her powers as coconservator for misconduct. A.C. did not provide a reporter's transcript or a settled statement for that hearing. There is no reporter's transcript or settled statement regarding the November 5, 2020, or February 9, 2021, proceedings. "In numerous situations, appellate courts have refused to reach the merits of an appellant's claims because no reporter's transcript of a pertinent proceeding or a suitable substitute was provided." (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186.)

A.C. claims the May 15, 2020, proceeding was not an evidentiary hearing and the order suspending her as a coconservator is not relevant. We disagree. The trial court's "order after hearing" states the court heard A.C.'s "testimony," and the minute order states that the court took "testimony

6

regarding the outstanding issues."  The order suspending her for misconduct as a coconservator is a relevant factor in considering whether to terminate her authority as a coconservator.  A.C. did not include many of the documents her opponents filed.  The record is not complete.

*Was Another Evidentiary Hearing Required?*

A.C. contends the trial court erred by terminating her as a coconservator at the August 2021 hearing based on declarations filed on behalf of the other coconservator and conservatee.  She claims the court was required to conduct an evidentiary hearing because this was a contested issue.

The decision to remove a conservator rests within the broad discretion of the trial court.  (*Guardianship of Davis* (1967) 253 Cal.App.2d 754, 761.)  An appellant has a strong burden to reverse such a ruling.  (*Ibid*.)  Removal of a conservator for cause may be initiated by declarations.  But where the declarations are contradicted, the court must hold an evidentiary hearing to decide the facts from the conflicting declarations.  (*Estate of Bennett* (2008) 163 Cal.App.4th 1303, 1310.)  The parties agree that whether the court erred by not conducting an evidentiary hearing is reviewed for abuse of discretion.

Here there were two declarations submitted in support of the order to terminate A.C. as coconservator.  But A.C. did not file a declaration in response to those declarations.

A.C., relying on *Bennett*, suggests that because her counsel went to the July and August hearings and requested another evidentiary hearing, the trial court had to conduct one.

But *Bennett* is distinguishable.  There the party opposing the motion filed "four declarations" in opposition (*Estate of Bennett*, *supra*, 163 Cal.App.4th at p. 1307) and claimed there

7

was a contested factual issue based on the "competing declarations." (*Id.* at p. 1309.) Here, there was no competing declaration. A.C. did not attend the July and August 2021 hearings. In July the trial court continued the hearing to August. That gave A.C. an opportunity to timely serve and file a written opposition to the motion to remove her. To contest that motion, she had to file a written opposition nine days prior to the August hearing date. (Code Civ. Proc., § 1005, subd. (b).) She did not do so. The court could find the *factual* basis for the motions to remove her was uncontradicted and the motions were uncontested. (Cal. Rules of Court, rule 7.801; *E.N.W. v. Michael W.* (1983) 149 Cal.App.3d 896, 899 [a "proceeding is *uncontested* when *no* answer or *opposition is filed*" (italics added)].)

### Section 2655

P.M. contends the trial court properly removed A.C. without conducting another evidentiary hearing under section 2655.

Section 2655 provides, "(a) A guardian or conservator may be removed from office if the guardian or conservator *is found in contempt for disobeying an order of the court.* [¶] (b) Notwithstanding any other provision of this article, a guardian or conservator may be removed from office under subdivision (a) by a court order reciting the facts and *without further showing or notice.*" (Italics added.)

A.C. contends the trial court did not follow the procedures required to punish her for contempt.

P.M. responds that A.C. was not being prosecuted for contempt. Instead, the coconservator gave notice that he was seeking A.C.'s removal under this statute. P.M. claims from

8

A.C.'s repeated violations of the trial court's orders, the court could find A.C. acted in contempt of the court's authority and find "her immediate removal was authorized by Probate Code section 2655."

It is true there is evidence that supports a finding of contempt from A.C.'s phone message to B.R. Quite apart from that, section 2655 is one of several Probate Code sections that give trial courts broad authority to promptly act against noncompliant conservators and representatives, even on the court's own motion. (§§ 2102, 2404, 2654, 15642, subd. (a); *Stine v. Dell'Osso* (2014) 230 Cal.App.4th 834, 846; *Schwartz v. Labow* (2008) 164 Cal.App.4th 417, 428.)

These statutes authorize trial courts "to promptly detect and *swiftly remove a conservator* who breaches his or her fiduciary duties." (*Stine v. Dell'Osso*, *supra*, 230 Cal.App.4th at p. 846, italics added; *Schwartz v. Labow*, *supra*, 164 Cal.App.4th at p. 428 [probate court's authority to immediately remove a trust representative on its own motion].) A.C. has not shown why the trial court could not act within the scope of this broad authority given the record in this case.

As stated earlier, A.C.'s termination was appropriate under the disentitlement doctrine given her record of violating its orders and her attitude toward the court. That doctrine may be applied by trial courts (*In re C.C.* (2003) 111 Cal.App.4th 76, 85-86), and it does not require a "formal judgment of contempt," but only conduct from which the court may find "*willful disobedience.*" (*In re E.M.*, *supra*, 204 Cal.App.4th at p. 477.) A.C has not shown why the record would not support such a finding.

*Other Factors*

Additional factors support the trial court's decision not to conduct another evidentiary hearing. The court had *previously issued* an order to show cause for A.C.'s *termination* as coconservator in May 2020. It held an evidentiary hearing where A.C. testified. It suspended her as a coconservator. In two subsequent proceedings, it granted relief in favor of B.R., which showed it had found A.C., as a suspended coconservator, had violated its orders. Consequently, the court could reasonably find that its prior proceedings had already established the grounds to remove her. It found the facts presented in the proceedings occurring prior to the August hearing had already established a "*surfeit of evidence* indicating that [A.C.'s] continued participation as a co-conservator is not benefiting the conservatee." (Italics added.)

In April 2020, J.C.'s counsel declared A.C. is "interfering with [J.C.'s] care." "The professionals responsible for [J.C.'s] care . . . agree that her constant interference is detrimental to [J.C.]." A.C. over medicated J.C. against the doctors' orders, threw water in J.C.'s face, broke the lock on J.C.'s medicine box, and took his medication for "her personal use." She placed J.C. at "risk of serious harm."

Because A.C. did not provide a record of the May 15, 2020, hearing, we must presume counsel's claims were proven and the evidence there showed "good cause" to suspend her. (*Null v. City of Los Angeles*, *supra*, 206 Cal.App.3d at p. 1532.) Given the lack of a record for the November 2020 and February 2021 proceedings, we must presume the evidence there showed she violated the trial court's orders and continued to interfere with J.C.'s care. (*Ibid*.) This and the evidence the court relied on to

10

issue orders to protect J.C. and his care providers support a termination order well before the August hearing. (§ 2650, subds. (a), (c), (f), (j); *In re E.M.*, *supra*, 204 Cal.App.4th at p. 477; *Guardianship of Davis, supra,* 253 Cal.App.2d 754, 761; *Estate of Howard* (1955) 133 Cal.App.2d 535, 539; *Guardianship of White* (1948) 84 Cal.App.2d 624, 629.)

The trial court could also reasonably find A.C.'s counsel did not make a sufficient offer of proof. "Failure to make an adequate offer of proof precludes consideration of the alleged error on appeal." (*In re Mark C.* (1992) 7 Cal.App.4th 433, 444.) A.C.'s counsel said, "I think that if the Court were to have an evidentiary hearing, the Court would be satisfied that [A.C.] should continue on as the conservator." But an offer of proof must state the witness's "testimony." (*United Sav. & Loan Assn. v. Reeder Dev. Corp.* (1976) 57 Cal.App.3d 282, 294.) Counsel did not state what A.C. would testify to in order to justify her noncompliance with the court's orders or her interference with J.C.'s care. Here, as in *Conservatorship of Farrant* (2021) 67 Cal.App.5th 370, 378, A.C. failed to make a sufficient offer of proof to support her claim that the trial court abused its discretion by not holding an evidentiary hearing.

But even had A.C. shown that not holding a hearing was error, it was harmless as there is no showing from this record of any reasonable probability of a more favorable result. (*In re J.P.* (2014) 229 Cal.App.4th 108, 128.)

## DISPOSITION

The order is affirmed.  Costs on appeal are awarded in favor of respondents.

<u>NOT TO BE PUBLISHED.</u>


GILBERT, P. J.

We concur:


YEGAN, J.


BALTODANO, J.

Colleen K. Sterne, Judge

Superior Court County of Santa Barbara

_____

Law Office of Neal B. Jannol and Neal B. Jannol for Objector and Appellant.

Haas Law Corporation, Kirstin Glass Haas; Ferguson Case Orr Paterson and Wendy C. Lascher for Petitioners and Respondents.