Filed 11/14/14 unmodified opinion attached

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| JOANNE HOLMAN STINE,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>MONICA DELL'OSSO et al.,<br><br>　　　Defendants and Respondents. | A137679<br><br>(Alameda County<br>Super. Ct. No. RG11608188)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

BY THE COURT:

It is ordered that the opinion filed herein on October 17, 2014, be modified as follows:

1.  The word "trustee," appearing twice in the second full paragraph on page 1, and once on page 10 in the first paragraph is changed to "conservator."

2.  The following footnote is added at the end of the first paragraph on page 8:

    In their petition for rehearing, the Attorneys maintain this opinion does not address the violations of their due process rights that will occur if they must defend themselves in this action, an argument neither advanced nor developed in their brief. Although a lawsuit must be dismissed if the elements of the cause of actions cannot be "established without breaching the attorney-client privilege . . . such drastic action will seldom if ever be appropriate at the demurrer stage of litigation." (*General Dynamics Corp. v. Superior Court*

1

(1994) 7 Cal.4th 1164, 1190.) "[I]n the usual case, whether the privilege serves as a bar to the plaintiff's recovery will be litigated and determined in the context of motions for protective orders or to compel further discovery responses, as well as at the time of a motion for summary judgment." (*Ibid.*) We express no opinion as to whether any such motions would be appropriate as the case progresses.

3. The following footnote is added at page 12, at the end of the final paragraph of the opinion before the disposition:

    The Attorneys claim Stine's malpractice action is barred by the litigation privilege set forth in Civil Code section 47. While they recognize "the litigation privilege may not apply to legal malpractice suits brought by a former client," (see *Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1541) they assert Stine was not the Attorneys' client. As we have concluded, Stine " 'steps into the shoes' " of the Attorneys' client—the predecessor conservator in his fiduciary capacity—and thus had standing to assert the malpractice claim as the successor conservator.

There is no change in the judgment.

The petition for rehearing is denied.

Dated: _____          _____

                                        Dondero, Acting P. J.

2

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JOANNE HOLMAN STINE,<br><br>       Plaintiff and Appellant,<br><br>v.<br><br>MONICA DELL'OSSO et al.,<br><br>       Defendants and Respondents. | A137679<br><br>(Alameda County<br>Super. Ct. No. RG11608188) |

## I. Introduction

Joanne Holman Stine (Stine), the conservator of Donna L. Davis (Donna), brought this malpractice action against Monica Dell'Osso and Burnham Brown, APC (Attorneys), for alleged dereliction in representing the prior conservator, David B. Davis III (David). David is Donna's son, and was removed as conservator after allegedly misappropriating over one million dollars in assets from the conservatorship estate.

The trial court sustained the Attorneys' demurrer to the complaint without leave to amend on two grounds: (1) the Attorneys' attorney-client relationship was with David, not Stine, and therefore the Attorneys owed no duty of care to Stine, and (2) Stine, as successor trustee, is subject to any defense that can be interposed against David and David's malfeasance, therefore, bars Stine from asserting a malpractice claim against the Attorneys under the doctrine of unclean hands. We reverse, concluding Stine, as the successor trustee, may pursue a malpractice claim against the Attorneys and she is not burdened by David's malfeasance.

## II. Procedural and Factual Background

Because this appeal is from a judgment following the sustaining of a demurrer without leave to amend, we set forth the facts as alleged in the operative (third amended)

1

complaint. (See *Mendoza v. Town of Ross* (2005) 128 Cal.App.4th 625, 629, fn. 3 [27 Cal.Rptr.3d 452] ["A demurrer admits, provisionally for purposes of testing the pleading, all material facts properly pleaded. Accordingly, the reviewing court may draw its facts, which it accepts as true for purposes of the appeal, from the plaintiff's complaint."].)

In 2002, David hired the Attorneys to represent him in connection with a "petition for the appointment of a probate conservator of the person and estate" of his mother. Thus, the "primary reason" David and the Attorneys established an attorney-client relationship was "to establish a conservatorship proceeding for [Donna] in order to preserve [Donna's] property and to ensure that [her] interests could be adequately protected in a family law action pending at the time in Alameda County."

In his petition for appointment as conservator, David represented "there were no conservatorship assets, as all of [Donna's] assets were held in her Trust," and therefore no bond was required. Donna, however, actually owned significant assets, including real property and several individual retirement accounts (IRAs), individually and not as assets of her Trust.

On January 10, 2003, the probate court issued letters of conservatorship and appointed David as conservator of both Donna's person and estate, finding she was "unable properly to provide for her personal needs for physical health, food, clothing or shelter and was substantially unable to manage . . . her financial resources or to resist fraud or undue influence." In the order appointing David, "the court waived bond."

The Attorneys continued to represent David following his appointment as conservator. During their representation, the Attorneys "knew that Donna . . . had assets in her name that under California law were assets of the conservatorship" and knew David "had marshaled those assets and that he was controlling them while he was serving as conservator for Donna." Indeed, the Attorneys "monitored and/or assisted [David] with the management of [Donna['s] . . . real property and IRA assets."

"[D]espite their knowledge of the existence of conservatorship assets," the Attorneys never informed the probate court of their existence despite their alleged

2

obligation to do so under the Probate Code. Likewise, the Attorneys never petitioned the court to require or increase a bond despite their alleged statutory obligation to do so.[1] As a result, no bond was in place to protect the conservatorship assets.

David subsequently misappropriated over one million dollars worth of conservatorship assets, including real and personal property. In December 2010, the probate court removed David as conservator and appointed Stine, a licensed professional fiduciary.

Stine then brought this action against David for financial elder abuse and conversion, and against the Attorneys for legal malpractice. After sustaining the Attorneys' demurrer to the third amended complaint without leave to amend, the trial court dismissed the lawsuit as to them.

### III. DISCUSSION

Stine is suing only for alleged malpractice occurring in connection with the Attorney's representation of David as conservator. She acknowledges she cannot pursue a claim for any malpractice that occurred prior to David's appointment, since at that time, the Attorneys represented David only in his individual capacity, and the attorney-client relationship was therefore between the Attorneys and David, individually, and not as conservator of Donna's person and estate.

The Attorneys therefore initially contend the allegations of the complaint allege only pre-appointment shortcomings in representation. This is too truncated a view of the allegations. (See *Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th

---

[1] Probate Code section 2320.1 provides: "When the conservator or guardian has knowledge of facts from which the guardian or conservator knows or should know that the bond posted is less than the amount required under Section 2320, the conservator or guardian, *and the attorney, if any, shall make an ex parte application for an order increasing the bond* to the amount required under Section 2320." (Italics added.) The California Rules of Court similarly specify: "If the . . . conservator of the estate, has not already made application [to increase the bond], *the attorney for the . . . conservator of the estate, must make the ex parte application immediately upon becoming aware of the need to increase bond.*" (Cal. Rules of Court, rule 7.204(b), italics added.)

3

1047, 1057 [154 Cal.Rptr.3d 727] [allegations must be viewed broadly on review of dismissal following sustaining of demurrer without leave to amend].)

The operative complaint alleged Attorneys represented David from 2002 *until he was removed as conservator in December 2010.* Thus, the complaint alleged Attorneys not only allegedly represented David, personally, in connection with preparation of the petition to have himself appointed conservator, but they continued to represent him after he was appointed conservator on January 10, 2003, in his capacity as conservator. Indeed, it was alleged that "during the course of their representation of [David], if not from the beginning of their representation, [the Attorneys] knew that Donna . . . had assets in her name that under California law were assets of the conservatorship," and Attorneys "knew that [David] had marshaled those assets and that he was controlling them *while he was serving as conservator for Donna.*" (Italics added.) Additionally, "*during the tenure of [David's] appointment*, [the Attorneys] monitored and/or assisted [David] with the management of Donna['s] real property and IRA assets." (Italics added.) However, the Attorneys neither "informed the San Mateo County Superior Court of the existence of such assets as is required under California law," nor petitioned the court "to establish or increase bond as is required by California law." David's malfeasance, moreover, did not occur until 2009, nearly six years into his role as conservator.

We therefore conclude the complaint adequately alleges post-appointment representation deficiencies by the Attorneys and therefore turn to the two principal issues—whether a successor conservator can sue for legal malpractice committed in connection with the representation of a prior conservator, and if so, whether Stine is barred from doing so in this case because of David's malfeasance while serving as conservator.

## A. *A Successor Conservator Can Sue a Prior Conservator's Attorneys for Legal Malpractice*

An attorney is normally "liable for malpractice only to the client with whom the attorney stands in privity of contract, and not to third parties." (*Borissoff v. Taylor &*

*Faust* (2004) 33 Cal.4th 523, 529 [15 Cal.Rptr.3d 735, 93 P.3d 337] (*Borissoff*).) Stine maintains two exceptions to this rule of privity apply: the successor fiduciary exception and the intended third party beneficiary exception. (*Id.* at pp. 530–531; *Lucas v. Hamm* (1961) 56 Cal.2d 583, 591 [15 Cal.Rptr. 821].) We conclude the successor fiduciary exception applies and therefore need not, and do not, decide whether the third party beneficiary exception applies.

The Probate Code provides a "successor personal representative has the powers and duties in respect to the continued administration that the former personal representative would have had." (§ 8524, subd. (c).) These include the power to "[c]ommence and maintain actions and proceedings for the benefit of the estate." (§ 9820, subd. (a).) Thus, "if the fiduciary who hired the attorney is replaced, the successor acquires the same powers the predecessor had in respect to trust [or estate] administration [citation], including the power to sue for malpractice." (*Borissoff*, *supra*, 33 Cal.4th at p. 530.) A successor fiduciary therefore "assumes all the powers of [the predecessor], including the power to assert the attorney-client privilege as to confidential communications on the subject of trust administration." (*Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1127 [69 Cal.Rptr.2d 317, 947 P.2d 279] (*Moeller*).)

Thus, " 'as a matter of statute, a successor personal representative (albeit a non-client) may bring suit against a predecessor's attorney for malpractice causing loss to the estate.' [Citation.]" (*Smith v. Cimmet* (2011) 199 Cal.App.4th 1381, 1397 [132 Cal.Rptr.3d 276].) "Indeed, the successor fiduciary must have standing to sue the predecessor's attorney if there is to be an effective remedy for legal malpractice that harms estates and trusts administered by successor fiduciaries." (*Borissoff*, *supra*, 33 Cal.4th at p. 531, see also Vapnek et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 2014) ¶ 6:271.11, pp. 60-60.2 to 60-60.3.)

While *Borissoff* is seemingly controlling as to Stine's standing to sue the Attorneys for malpractice allegedly committed in connection with their representation of the predecessor fiduciary, David, they insist the Supreme Court's holding is narrow and applies only where a predecessor fiduciary instructed the attorney to do a specific act and

5

the attorney failed to do so.  Nothing in *Borissoff*, however, imposes such a limitation on a successor fiduciary's malpractice claim.

In that case, one Paul Springer was appointed special administrator of an estate pending a will contest.  (*Borissoff*, *supra*, 33 Cal.4th at p. 527.)  He retained the law firm of Taylor & Faust "to provide assistance on tax matters."  (*Ibid*.)  The retention letter indicated the firm " 'agreed to prepare the Federal and California estate tax returns and the fiduciary income tax returns for the estate, to provide [Springer] with tax planning advice concerning the estate and to perform any other legal services which [Springer] request[s].' " (*Ibid*.)  The firm subsequently filed federal and state estate tax returns. (*Ibid*.)

At some point, Springer "borrowed" about $115,000 from the estate, then sought help from Taylor & Faust to keep him " 'out of trouble.' " (*Borissoff, supra*, 33 Cal.4th at pp. 527–528.)  The firm attempted, without success, to help him borrow money to repay the estate.  The firm then informed him they " 'decided not to represent [Springer] any longer in [his] capacity as administrator . . . .' " (*Ibid*.)  Springer subsequently died, and Taylor & Faust turned over the estate's file to attorney Burton McGovern.  (*Id*. at p. 528.)  McGovern corresponded with the Internal Revenue Service, and asked them to " 'address all communications' " regarding the estate to him.  About three months later, the deadline passed for the estate to file a form which would have extended by three years the estate's right to claim a tax refund.  (*Ibid*.)

Two years later, the will contest was resolved, and the court appointed Robert Borissoff as executor.  (*Borissoff*, *supra*, 33 Cal.4th at p. 528.)  Borissoff's attorney wrote McGovern expressing concern the extension form had not been filed, and subsequently filed a malpractice action against both Taylor & Faust and McGovern.  (*Ibid*.)  The attorneys claimed they owed no duty to Borissoff, "with whom they did not stand in privity of contract."  (*Ibid*.)

The question, stated the Supreme Court, was:  " 'May a successor fiduciary of an estate in probate assert a professional negligence claim against tax counsel whom a predecessor fiduciary engaged exclusively to perform tax work for the estate?' "  After

6

reviewing the provisions of the Probate Code discussed above, the court "answere[ed] it in the affirmative." (*Borissoff, supra*, 33 Cal.4th at pp. 528–529, fn. omitted.) "[T]he absence of privity, viewed as an impediment to standing, is a gap the Legislature has filled" with Probate Code sections 8524, subdivision (c), 9820, subdivision (a), and 10801, providing successor fiduciaries have "the powers and duties that the former [fiduciary] would have had," including the power to " '[c]ommence and maintain actions . . . for the benefit of the estate.' " (*Id*. at p. 530.)

Thus, *Borissoff*'s holding is not limited to a malpractice claim based on an attorney's failure to follow a predecessor fiduciary's direct instruction. In fact, nothing in the opinion indicates either the initial or successor fiduciary ever specifically asked any attorney to file an extension form. (See *Borissoff*, *supra*, 33 Cal.4th at pp. 527–528.) Rather, the Supreme Court's holding is grounded on the statutory provisions ensuring a successor fiduciary can seamlessly take over the fiduciary role and protect the interests of the estate, including recovering for losses caused by legal malpractice occurring during the tenure of a prior fiduciary. (*Id.* at p. 531.)

There is no merit, then, to the Attorneys' assertion this malpractice action is barred by the reasoning of *Solin v. O'Melveny & Myers* (2001) 89 Cal.App.4th 451 [107 Cal.Rptr.2d 456] (*Solin*). In that case, an attorney sued a law firm he had retained to provide advice in connection with representing several clients. (*Id.* at p. 453.) In consulting with the firm, the attorney disclosed confidential attorney-client information. (*Ibid.*) The clients intervened and moved to dismiss the malpractice action on the ground their confidential information would otherwise be disclosed. (*Id.* at p. 454.) The Court of Appeal upheld dismissal on the ground the law firm could not effectively defend itself without disclosure of the confidential information, and neither it, nor the plaintiff attorney, was the holder of the attorney-client privilege and entitled to waive it. (*Id.* at pp. 465–467.)

Here, in contrast, there is no non-party client who holds the attorney-client privilege and whose confidential attorney-client information would be improperly revealed in connection with either the prosecution or defense of this malpractice case. As

7

discussed, this case is based solely on alleged malpractice occurring *after* David's appointment as conservator, and Stine, as the successor fiduciary, became the holder of the privilege as to all communications by and between the fiduciary and counsel pertaining to the conservatorship estate, whenever they occurred. (See *Moeller, supra,* 16 Cal.4th at pp. 1129–1135 [because fiduciary is holder of the attorney-client privilege in his or her capacity as such, successor fiduciary becomes the holder as to confidential communications between predecessor fiduciary and attorney concerning trust administration].) Having assumed David's fiduciary role, Stine can, and has, waived the attorney-client privilege. (*See Borissoff, supra,* 33 Cal.4th at p. 534 [malpractice claim by successor fiduciary does not impair attorney-client confidentiality because successor fiduciary holds and waives privilege only as to communications made to individual in his or her fiduciary capacity, not personal capacity].)

## B. *A Prior Conservator's Malfeasance Does Not Bar a Successor Conservator From Pursuing a Malpractice Claim on Behalf of the Estate*

Even assuming a successor fiduciary has the power to pursue a malpractice claim on behalf of the estate, the Attorneys claim David's malfeasance while he was the conservator is imputed to Stine as the successor conservator and thus bars the instant case. "[I]f Stine assumes David's powers," say the Attorneys, "she must also assume his limitations." She is therefore barred, claim the Attorneys, from pursuing this malpractice claim by the doctrine of "unclean hands." We conclude this equitable doctrine does not apply to Stine.

"[T]he unclean hands doctrine is not a legal or technical defense to be used as a shield against a particular element of a cause of action. Rather, it is an equitable rationale for refusing a plaintiff relief where principles of fairness dictate that the plaintiff should not recover, regardless of the merits of his claim. It is available to protect the court from having its powers used to bring about an inequitable result in the litigation before it." (*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 985 [90 Cal.Rptr.2d 743] (*Kendall-Jackson*).) By the same token, " '[w]henever an inequitable result would be accomplished by application of the "[un]clean hands"

8

doctrine the courts have not hesitated to reject it.' " (*Hillman v. Stults* (1968) 263 Cal.App.2d 848, 871 [70 Cal.Rptr. 295], quoting *Womack v. Womack* (1966) 242 Cal.App.2d 572, 579 [51 Cal.Rptr. 668].)  Moreover, "[s]ince the doctrine of unclean hands is heavily fact dependent, it is a uniquely poor candidate to support a demurrer." (*CrossTalk Productions, Inc. v. Jacobson* (1998) 65 Cal.App.4th 631, 641 [76 Cal.Rptr.2d 615].)

The Attorneys rely on *Blain v. Doctor's Co.* (1990) 222 Cal.App.3d 1048 [272 Cal.Rptr. 250] (*Blain*).  In that case, a physician was sued for medical malpractice and lied at his deposition, purportedly on counsel's advice.  (*Id.* at pp. 1057–1058.)  On losing the medical malpractice case, the physician turned around and sued his defense lawyer for legal malpractice, claiming his damages were the result of his lawyer's advice to lie.  (*Id.* at p. 1058.)

*Blain* explained " '[o]ne is not barred from recovery for an interference with his legally protected interests merely because at the time of the interference he was committing a tort or crime. . . .'  (Italics added.)" (*Blain, supra*, 222 Cal.App.3d at p. 1060.)  The question is whether " ' "under the circumstances there should be an application of that rule of equity which denies relief to one party against another when both have been engaged in a fraudulent transaction . . . ." ' " (*Id.* at p. 1062.)  "[W]hether there is a bar depends upon the analogous case law, the nature of the misconduct, and the relationship of the misconduct to the claimed injuries." (*Id.* at p. 1060.)  Applying these principles to the case at hand, the appellate court held the physician's damages, if any, were "attributable to his own knowing misbehavior.  Even the most naive must know that lying under oath is illegal. . . .  The misconduct was . . . the instrumentality of harm." (*Id.* at p. 1063.)

To begin with, *Blain* is distinguishable on its facts.  The court in that case did not have before it, and thus did not address, a claim by a successor fiduciary prosecuted on behalf of an injured estate.

Furthermore, applying *Blain'*s analytical template compels the conclusion a successor fiduciary should not be subjected to the unclean hands doctrine by imputation.

9

The unclean hands doctrine applies when it would be unfair for the plaintiff to profit from his or her own wrongdoing, even assuming the defendant might otherwise be liable, at least in part, for the losses sustained by the plaintiff. (See *Kendall-Jackson, supra,* 76 Cal.App.4th at p. 985.) While it would be unfair for David to *personally* profit from his own malfeasance and thus to sue his former attorneys for losses caused by his own theft, it is entirely fair for the blameless successor trustee to pursue a malpractice claim against these attorneys on behalf of the injured estate.

Indeed, the Probate Code, itself, rejects the notion the sins of a malfeasing fiduciary are to be visited upon a successor or cofiduciary, thus crippling the latter's efforts to recoup losses sustained by the estate they are charged with protecting. The Probate Code specifies, for example, that "a successor trustee is not liable to the beneficiary for a breach of trust committed by a predecessor trustee." (§ 16403, subd. (a); see also § 2101 ["The relationship of . . . conservator and conservatee is a fiduciary relationship that is governed by the *law of trusts,* except as provided in this division."], italics added.) Similarly, a conservator is generally "not liable for a breach of fiduciary duty committed by another . . . conservator." (§ 2105.5, subd. (a).)

The Probate Code also distinguishes between actions by fiduciaries within their representative capacity and actions outside the scope of their authority and involving personal fault. "A trustee is personally liable for obligations arising from ownership or control of trust property only if the trustee is personally at fault." (§ 18001; see also § 18004 ["claim based on a contract entered into by a trustee in the trustee's representative capacity . . . may be asserted against the trust by proceedings against the trustee in the trustee's representative capacity"].) "A trustee who . . . acted in his representative capacity cannot be held personally liable under section 18001 for an obligation . . . solely upon a showing that the obligation arose out of his ownership or control of the trust property. The imposition of such personal liability must also rest on a finding of personal fault supported by a sufficient showing that the trustee's conduct was intentional or negligent." (*Haskett v. Villas at Desert Falls* (2001) 90 Cal.App.4th 864, 878 [108 Cal.Rptr.2d 888].) Similarly, a "trustee is personally liable for torts committed

10

in the course of administration of the trust only if the trustee is personally at fault."
(§ 18002.)  A conservator, specifically, is also generally not personally liable on an instrument, such as a contract or deed of trust, if "properly entered into in the . . . conservator's fiduciary capacity."  (§ 2110.)

These statutory provisions (§§ 18000–18005) distinguishing between acts by a fiduciary within his or her fiduciary capacity, and those in his or her personal capacity, were enacted in 1986 to *change* the "basic rule of the common law . . . that the trustee is personally liable for obligations incurred in administration of the trust to the same extent as if the trustee held the property free of trust."  (Recommendation Proposing the Trust Law (Dec. 1985)18 Cal. Law Revision Com. Rep. (1986) p. 587.)  As the Law Revision Commission noted, sections 18000 through 18005 "provide more protection to trustees by treating them in a representative capacity, not unlike corporate officers."  (*Ibid*.)

This case well illustrates the wisdom of these provisions—why would any competent individual agree to take over as a successor fiduciary if he or she were tarred with and shackled by the malfeasance of a prior fiduciary?  The Probate Code requires court monitoring of conservatorship estates, in part to promptly detect and swiftly remove a conservator who breaches his or her fiduciary duties.  (§§ 2102, 2404, 2650–2655; see *Conservatorship of Ben C*. (2007) 40 Cal.4th 529, 540 [53 Cal.Rptr.3d 856, 150 P.3d 738] ["[T]he Legislature and this court have built several layers of important safeguards into conservatorship procedure."].)  The code likewise provides for the installation of successor conservators to protect vulnerable conservatees and right the affairs of imperiled conservatorship estates.  (§§ 2340, 2680–2689; see *Borisoff*, *supra*, 33 Cal.4th at p. 531.)  In short, the Probate Code contemplates skilled and willing successor fiduciaries empowered to correct wrongs perpetrated by a malfeasing predecessor fiduciaries.

That an individual who is a fiduciary wears two distinct and separate hats—one as a fiduciary and one as an individual—is reflected, as well, in the law regarding the attorney/client relationship, as we have discussed.  "[W]hen a fiduciary hires an attorney for guidance in administering a trust, the fiduciary alone, *in his or her capacity as*

11

*fiduciary*, is the attorney's client." (*Borissoff, supra*, 33 Cal.4th at p. 529, italics added.) Thus, a trustee "may be authorized to employ attorneys to assist in administration of trust affairs, in which event an attorney-client relationship exists between the attorney and the trustee (*in the trustee's representative capacity*)." (Vapnek et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 2014) ¶ 3:118, p. 3-48, italics added.) "Therefore, a lawyer who represents a fiduciary in the client's capacity as fiduciary (Client X) has no conflict of interest in representing another client (Client Y) adverse to Client X in [his or her] personal capacity." (Streisand, *Malpractice Melee: Fending Off the Disgruntled and Disappointed, An Estate Planner's Guide* (2010–2011) 3 Est. Plan. & Community Prop. L.J. 241, 280.)

The foregoing statutory provisions and legal principles make clear that the fact Stine, as successor conservator, assumes David's *fiduciary* powers does not mean she also assumes his *personal* limitations or liabilities. David's misconduct was outside the scope of his fiduciary authority, and David, alone, is personally responsible for his wrongful acts in breach of his fiduciary obligations. Thus, Stine "steps into his shoes" only to the extent of his fiduciary authority; she does not step into the morass created by his personal malfeasance. Stine is therefore not burdened by David's misdeeds in exercising her authority as the successor conservator, and thus is not barred from pursuing this malpractice case against the Attorneys in connection with their post-appointment representation. Indeed, it would be wholly antithetical to the protective purposes for establishing a conservatorship in the first place—to protect the interests of an enfeebled individual who can no longer look out for his or her own interests—if a successor conservator, installed in the wake of a conservator who abandoned his fiduciary obligations, could not seek redress on behalf of the ravaged estate from those whose dereliction allegedly contributed to the loss.

### IV. DISPOSITION

The judgment of dismissal is reversed. Stine shall recover her costs on appeal.

12

_____

Banke, J.


We concur:


_____

Dondero, Acting P. J.


_____

Becton, J.*


A137679, *Stine v. Dell'Osso*

_____

    \* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Judge:                              Honorable George C. Hernandez, Jr.


Trial Court:                              Alameda County Superior Court


Aaron, Riechert, Carpol & Riffle and Kathleen A. Durrans, Brian E. Kulich and Sarah A. Brooks for Plaintiff and Appellant.


Law Offices of Steven B. Piser and Steven B. Piser; and Murphy, Pearson, Bradley & Feeney and Timothy J. Halloran and Jonathan M. Blute for Defendants and Respondents.