Filed 10/19/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CYNTHIA PARKER,<br><br>      Plaintiff and Appellant,<br>v.<br>KIM SCHWARCZ, as Conservator, etc.,<br><br>      Defendant and Respondent. | A165163<br><br>(Marin County<br>Case No. PRO-2100630) |

Following the probate court's termination of the temporary conservatorship of her estate, former conservatee Cynthia Parker filed a "Petition for Return of Property; for Declaratory Relief" requesting all communications and documents concerning the administration of the conservatorship estate from professional fiduciary Kim Schwarcz, the temporary conservator. The petition for return of property was made pursuant to Probate Code section 850[1], which allows for the filing of various petitions to recover property for or from a conservatorship estate. The probate court determined Parker's petition failed as a matter of law because section 850 did not authorize such a petition. The court also denied her declaratory relief claim.

---

[1]     All further statutory references are to the Probate Code unless otherwise stated.

As Parker's request for communications and documents from the administration of the temporary conservatorship estate is not the proper subject of a section 850 petition, and her challenges to the declaratory relief claim forfeited, we shall affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2021, Parker's daughters filed petitions for appointment of a general probate conservator of their mother's estate and for appointment of a temporary conservator. They alleged that Parker, who had access to large sums of money, required a conservator because she was unable to manage her financial resources and unable to resist fraud or undue influence. Following a hearing, the court appointed Schwarcz, a professional fiduciary, as temporary conservator of Parker's estate to protect property from loss or injury pending the hearing on the petition for appointment of a general conservator.

In April 2021, Schwarcz (as temporary conservator) applied to the court for an order granting her additional powers to address a severance agreement between Parker and her former employer and to handle litigation regarding a dispute over a real estate transaction. The court granted the application and shortly thereafter also appointed counsel for Parker.

In May 2021, Parker's daughters amended their petition to seek Schwarcz's appointment as general conservator of their mother's person in addition to her estate. In addition to the allegations that Parker was unable to manage her finances, the amended petition requested that Parker be adjudged to lack the capacity to give informed consent for medical treatment or healing by prayer. It alleged she was no longer able to provide for her personal needs for physical health, food, clothing, or shelter. Parker filed objections to the amended petition and demanded a jury trial. She asserted

2

she was "perfectly capable of managing her own assets . . . and [was] able to resist fraud and undue influence," and also able to provide for her personal needs. In August 2021, the court conducted a hearing on the amended petition and shortly thereafter issued an order continuing the temporary conservatorship of Parker's estate without any expansion to include a temporary conservatorship over the person. The court also made no ruling on the request for a general conservator of either Parker's person or estate.

In September 2021, following a mediation among Parker, her daughters, and Schwarcz, the parties entered into a settlement agreement to resolve the issues presented in the amended petition. Among other things, the settlement agreement provided for a less restrictive alternative to a conservatorship, including the creation and funding of an irrevocable trust to be managed by the Guardianship Services of Seattle ("GSS") as trustee. Schwarcz was required to "fund all assets of [Parker's] conservatorship estate in her possession, custody, or control, other than retirement accounts, into the irrevocable trust upon execution of the irrevocable trust" minus a small reserve to cover any outstanding checks. Parker asked the court to issue an order approving the settlement and terminating the temporary conservatorship. All parties verified Parker's request for such an order.

In November 2021, the court granted the petition to approve the settlement agreement subject to two modifications that addressed concerns raised in objections filed by Schwarcz. In the same order, the court terminated the temporary conservatorship of Parker's estate effective immediately.

Nearly two months after the temporary conservatorship was terminated, Parker's counsel emailed Schwarcz's counsel a request for "all communications between Kim Schwarcz and anyone regarding [Parker's]

3

estate, including third-parties and [counsel's] office." Schwarcz's counsel refused to comply.

In February 2022, Parker filed the "Petition for Return of Property; for Declaratory Relief" that underlies this appeal. In the petition's first cause of action, entitled "Return of Property," Parker requested an order pursuant to section 850 "compelling Ms. Schwarcz to transfer to Ms. Parker all communications between Ms. Schwarcz and any person related to Ms. Schwarcz's service as temporary conservator of the estate of Ms. Parker, as well as all other documents related to Ms. Schwarcz's service as temporary conservator of the estate of Ms. Parker." In the alternative, "to the extent some documents more appropriately should be transferred to [GSS], the trustee of Ms. Parker's irrevocable trust," Parker sought an order compelling such a transfer. In the second cause of action for declaratory relief, Parker sought an "order clarifying whether she or, in the alternative, GSS, [was] entitled to receive the documents and communications sought through this petition" as well as an order compelling Schwarcz to provide such documents to Parker or GSS. The petition added that the sought-after communications and documents "can be broken down into the following categories: (a) Communications between Ms. Schwarcz and a non-attorney; (b) Communications between Ms. Schwarcz and her attorney *without* copying or otherwise including another person (such as Ms. Parker's daughters . . . ); (c) Communications between Ms. Schwarcz and her attorney copying or otherwise including another person; and (d) Documents related to the temporary conservatorship of the estate, such as medical records, financial records, or notifications." The same categories of communications and documents were identified in Parker's declaratory relief cause of action, as well. Schwarcz opposed the petition and filed written objections.

4

Following oral argument, the court denied Parker's petition. The denial order, filed on May 3, 2022, states, in relevant part: "The Petition is denied. Probate Code 850 does not authorize a Petition under these circumstances. (i.e., there is no conservatee and there is no personal property potentially belonging to [Parker].) At best, this appears to be a discovery request which may (or may not) be applicable to future hearings/filings." The court noted the ruling did not preclude Parker "from seeking the same information or documents through discovery," and that the court would consider the merits of any objections to such discovery if and when presented. The court's written order did not address the declaratory relief claim, but the court indicated at the hearing the declaratory relief claim would not be granted. This appeal followed.

## DISCUSSION

### A.     Probate Code section 850

Section 850 allows the filing of various petitions to recover property when the dispute involves a conservatorship or guardian (§ 850, subd. (a)(1)), the personal representative of a decedent's estate (§ 850, subd. (a)(2)), or a trustee (§ 850, subd. (a)(3).)

The conservatorship or guardian provisions of section 850, subdivision (a) state: "The following persons may file a petition requesting that the court make an order under this part: [¶] (1) A guardian, conservator, or any claimant, in the following cases: [¶] (A) Where the conservatee is bound by a contract in writing to convey real property or to transfer personal property, executed by the conservatee while competent or executed by the conservatee's predecessor in interest, and the contract is one that can be specifically enforced. [¶] (B) Where the minor has succeeded to the interest of a person bound by a contract in writing to convey real property or to transfer personal

5

property, and the contract is one that can be specifically enforced. [¶] *(C) Where the guardian or conservator or the minor or conservatee is in possession of, or holds title to, real or personal property, and the property or some interest therein is claimed to belong to another.* [¶] (D) Where the minor or conservatee has a claim to real or personal property title to or possession of which is held by another." (§ 850, subd. (a)(1)(A)–(D), emphasis added.)

At issue here is section 850, subdivision (a)(1)(C) – the part emphasized above – under which Parker filed her petition seeking the return of property, specifically all communications and documents related to Schwarcz's service as temporary conservator of Parker's estate. In asserting error, Parker states "[t]he plain language of Probate Code section 850 authorizes the relief [she] sought in the petition." She contends the trial court mistakenly concluded she needed to be a conservatee to bring the petition and that her status as a "claimant" within the meaning of section 850 gave her standing to file the petition. She further asserts the trial court erred in concluding the petition involved no "personal property" because the communications and documents sought through the petition have long been recognized to be such.[2]

### 1. Statutory Construction

The parties have not cited, nor have we found, any published case interpreting these provisions of section 850, subdivision (a)(1). As such, we consider this dispute to be a matter of statutory interpretation which we

---

[2] We reject Schwarcz's contention that Parker's appeal is moot because Parker has served written discovery encompassing the relief sought in her petition. "The pivotal question in determining if a case is moot is therefore whether the court can grant the plaintiff any effectual relief" and there is no indication in the record that Parker is in receipt of the sought-after communications or documents. (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1574.) Accordingly, this appeal is not moot.

review de novo. (See *California Building Industry Assn. v. State Water Resources Control Board* (2018) 4 Cal.5th 1032, 1041.) "In construing statutes, we aim 'to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.'" [Citations.] We look first to the words of the statute, 'because the statutory language is generally the most reliable indicator of legislative intent.' [Citations.] [¶] When the statutory text is ambiguous, or it otherwise fails to resolve the question of its intended meaning, courts look to the statute's legislative history and the historical circumstances behind its enactment. [Citation.] Finally, the court may consider the likely effects of a proposed interpretation because ' "[w]here uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation." ' " (*Klein v. United States* (2010) 50 Cal.4th 68, 77 (*Klein*).)

We assume without deciding that Parker was a "claimant" within the meaning of section 850, subdivision (a)(1) and thus had standing to bring her petition.[3] So assumed, this case presents an issue of first impression concerning the nature of "personal property" interests that may be asserted in petitions brought pursuant to section 850, subdivision (a)(1)(c). Specifically, the question before us is whether the communications and documents from Schwarcz's service as temporary conservator of Parker's estate are the type of personal property interests that can properly be sought through and adjudicated in a section 850 petition. On this narrow point, we conclude they are not. As discussed below, we conclude based on our review

---

[3] On several occasions, Parker contends in the alternative that GSS, the current trustee of her irrevocable trust, is entitled to the documents sought in the petition. We neither assume nor address whether Parker can file a section 850 petition on behalf of GSS, which did not join or file any papers related to Parker's petition.

of the applicable legislative history and case law construing section 850 and its predecessor statutes that the Legislature intended section 850 to provide a mechanism for probate courts to resolve ownership disputes with respect to personal property constituting assets of an estate. Nothing in the relevant legislative history or case law suggests the Legislature intended for section 850 to be used to obtain communications and documents from a conservator's administration of a conservatorship estate.

We begin our statutory analysis by rejecting Parker's contention that her request for "medical records, documents, emails, and other communications" from Schwarcz's service as temporary conservator unambiguously fell within the meaning of "personal property" in section 850. According to Parker, since these communications could "be seen and otherwise perceived by the senses," they "[fell] within the definition of tangible personal property" and were thus "personal property" under section 850.

Parker cites no authority – or any text in section 850 – to support her view that "personal property" in section 850 means all "tangible personal property," as she contends. Further, as explained by our Supreme Court in *Estate of Dodge* (1971) 6 Cal.3d 311, the phrase "personal property" is "one whose inherent ambiguity has been noted in many court decisions. The Civil Code gives that term a broad definition, encompassing all property not classed as real property (Civ. Code, § 663), including 'money, goods, chattels, things in action, and evidences of debt' (Civ. Code, § 14). The phrase, however, carries a meaning in the popular sense that denotes 'only such goods and chattels as are subject of personal use or comfort.' " (*Id.* at pp. 318–319, footnote omitted.)

As neither the statutory text of section 850 nor the statutory scheme it is part of makes clear whether the communications and documents Parker seeks constitute "personal property" within the meaning of the statute, we look to the legislative history and historical circumstances surrounding the statute's enactment to understand the type of property disputes the Legislature intended probate courts to adjudicate under section 850.[4] (See *Klein*, *supra*, 50 Cal.4th at p. 77.)

### a.  *Legislative History of Section 850.*

The origins of section 850 trace back to the probate court's historic lack of power to determine claims adverse to the properties of an estate when asserted by a stranger to the estate, that is, a person not in privity with the probate proceeding.  In *Estate of Dabney* (1951) 37 Cal.2d 672, the Supreme Court noted:  "It is established law 'That the probate court has no jurisdiction to determine adverse claims to the properties of an estate in course of administration before it when asserted by a stranger to said estate . . . [citation],' or 'to try the question of title to property as between a representative of the estate and strangers to the estate.' " (*Id.* at pp. 676–677.)

"This limitation on probate court jurisdiction . . . was subject to strong criticism, and abrogated in 1972 by amendment of Probate Code, section 851.5.  The Legislature thereby (§§ 851.5, 852, 853, Prob. Code) gave the probate court the power to determine controversies concerning title to

---

[4]    The parties provided no legislative history in their appellate briefs.  We requested and received supplemental briefing concerning the legislative history of section 850, or its predecessor statutes, and the impact such legislative history has on the court's analysis of whether section 850 authorized Parker's petition for an order requiring Schwarcz to produce communications and documents related to the temporary conservatorship of Parker's estate.

9

property where the party asserting an interest is claiming adversely to the estate." (*Richer v. Superior Court* (1976) 63 Cal.App.3d 748, 756 (*Richer*), disapproved on other grounds by *Kowis v. Howard* (1992) 3 Cal.4th 888, 897–899.)  Former section 851.5 provided "for a hearing in the probate court to determine ownership of property '(i)f a person dies in possession of, or holding title to, real or personal property which . . . is claimed to belong to another, or dies having a claim to real or personal property, title to or possession of which is held by another, . . .' upon a petition brought by the executor, administrator, or any claimant." (*Estate of Williams* (1977) 73 Cal.App.3d 141, 143, fn. 1; see also *Estate of Myers* (2006) 139 Cal.App.4th 434, 441 (*Myers*).)  As explained in *Estate of Linnick* (1985) 171 Cal.App.3d 752, "Section 851.5 . . .  provide[d] the authority and the procedure for the hearing of a petition by a decedent's estate concerning any claim involving property allegedly wrongfully possessed by another." (*Id.* at p. 760.)  The court in *Estate of Scott* (1987) 197 Cal.App.3d 913 (*Scott*), further noted that "to proceed under section 851.5 [a petitioner] must be attempting to recover assets in which there is an interest belonging to the decedent, hence, to the estate." (*Id.* at p. 918.)

The successor statute to section 851.5 was section 9860.  (*Parker v. Walker* (1992) 5 Cal.App.4th 1173, 1184; *Estate of Phelps* (1990) 223 Cal.App.3d 332, 338.)  That statute provided in pertinent part: "(a) The personal representative or any interested person may file a petition requesting that the court make an order under this chapter in any of the following cases:  (1) Where the decedent while living is bound by a contract in writing to convey real property or to transfer personal property and dies before making the conveyance or transfer and the decedent, if living, could have been compelled to make the conveyance or transfer.  (2) Where the

10

decedent while living binds himself or herself or his or her personal representative by a contract in writing to convey real property or to transfer personal property upon or after his or her death and the contract is one which can be specifically enforced.  (3) Where the decedent died in possession of, or holding title to, real or personal property, and the property or some interest therein is claimed to belong to another.  (4) Where the decedent died having a claim to real or personal property, title to or possession of which is held by another." (Former § 9860, subd. (a)(1)–(4).)  The Legislature adopted similar provisions in the guardianship and conservatorship context to address conveyances and transfers of real or personal property claimed to belong to a ward, conservatee, or third party with the enactment of sections 2520 to 2529.  (See former §§ 2520–2529.)[5]

In 2001, sections 2520 to 2529 and 9860 to 9689 were repealed, reformulated, and substantially reenacted as current day sections 850 to 859. (Stats. 2001, ch. 49, § 4, p. 232.)  Sections 850 to 859, which took effect in 2002 and now fall under Division 2, Part 19 of the Probate Code entitled

---

[5]      For example, former section 2520, entitled "Petition for orders," provided as follows:  "(a) The guardian or conservator or any claimant may file a petition requesting that the court make an order under this article in any of the following cases:  [¶]  (1) Where the conservatee is bound by a contract in writing to convey real property or to transfer personal property, executed by the conservatee while competent or executed by the conservatee's predecessor in interest, and the contract is one that can be specifically enforced.  [¶]  (2) Where the ward has succeeded to the interest of a person bound by a contract in writing to convey real property or to transfer personal property, and the contract is one that can be specifically enforced.  [¶]  (3) Where the guardian or conservator or the ward or conservatee is in possession of, or holds title to, real or personal property, and the property or some interest therein is claimed to belong to another.  [¶]  (4) Where the ward or conservatee has a claim to real or personal property title to or possession of which is held by another. [¶]  (b) The petition shall set forth facts upon which the claim is based." (Former § 2520.)

11

"Conveyance or Transfer of Property Claims to Belong to Decedent or Other Person," consolidated these former provisions of the Probate Code, as well as similar provisions related to trusts. (See CEB, California Trust & Probate Litigation § 19.1 ["Express statutory authorization for the probate court to resolve disputed property claims is now found in Probate Code sections 850 to 859, which restate and consolidate into a single place former similar, but not identical, provisions related to decedents estates (former § 9860–9869), trusts (former § 17200.1 and 17200.2), and guardianships and conservatorships (former §§ 2520–2529).].)" Together, these provisions now make up "a coherent scheme designed to allow guardians, conservators, executors, or trustees to recover assets which should be part of the relevant estate but which are not because they were transferred improperly." (*In re Pereira and Melo Dairy* (Bankr. E.D. Cal. 2005) 325 B.R. 1, 4–5 (*Pereira*) [noting that "[s]ection 850 permits a conservator to sue third parties to recover property allegedly belonging to the conservator estate"].)

Recent cases have observed that " '[t]he statutory scheme's purpose is to effect a conveyance or transfer of property belonging to a decedent or a trust or another person under specified circumstances, to grant any appropriate relief to carry out the decedent's [or settlor's] intent, and to prevent looting of . . . estates. [Citations.] It provides the probate court with a mechanism to determine rights in property belonging to a decedent or to someone else.' " (*Dudek v. Dudek* (2019) 34 Cal.App.5th 154, 170–171; see also *Estate of Kraus* (2010) 184 Cal.App.4th 103, 117–118 (*Kraus*); *Estate of Young* (2008) 160 Cal.App.4th 62, 75 ["Section 850 et seq. provides a mechanism for court determination of rights in property claimed to belong to a decedent or another person."].)

### b. Based on the Legislative History, the Documents and Communication Sought by Parker Do Not Fall Within the Parameters of Section 850.

The broad legislative history of section 850 and the historical circumstances around the enactment of its predecessor statutes in no way suggest the Legislature intended section 850 to be used by a claimant to obtain communications and documents generated by a temporary conservator during the administration of a conservatorship estate.

Rather, the statutory scheme was designed to allow conveyances or transfers of real and personal property into or out of an estate, trust, conservatorship, or guardianship estate as part of an expedited court proceeding. Its aim was to allow probate courts to resolve controversies surrounding "title to property" (*Dabney*, *supra*, 37 Cal.2d at p. 676; *Richer*, *supra*, 63 Cal.App.3d at p. 756) and to " 'determine rights in property' " involving estates. (*Dudek*, *supra*, 34 Cal.App.5th at pp. 170–171).

Thus, section 850 and its predecessors provided a way for estates to resolve ownership disputes with respect to property constituting assets of an estate (see, e.g., *Pereira*, *supra*, 325 B.R. at pp. 4–5 [noting statutory scheme was designed to allow parties "to recover assets"]; *Scott*, *supra*, 197 Cal.App.3d at p. 918), allowing an estate's personal representative to recover assets for the estate, or a claimant to recover from the estate an asset that rightfully belonged to the claimant. Nothing in the legislative history suggests that section 850 was intended to be used to recover documents related to an estate's administration or that such documents constituted assets of an estate that fell within the parameters of a section 850 petition.

Cases decided under section 850's parallel provisions applicable to a decedent's estate (§ 850, subd. (a)(2)) and trusts (§ 850, subd. (a)(3))

13

underscore this view.  For instance, in *Myers*, *supra*, 139 Cal.App.4th 434, the creditor of an estate filed a section 850 petition to recover profits from the sale of real property for the benefit of the estate's creditors based upon a claim that the property had previously been fraudulently conveyed by the decedent.  (*Id.* at p. 436.)  In *Kraus*, *supra*, 184 Cal.App.4th 103, two beneficiaries of a trust filed a section 850 petition seeking the restitution of approximately $200,000 in funds belonging to a decedent that had been misappropriated by decedent's brother through a void power of attorney prior to death.  (*Id.* at pp. 110–115.)

In cases decided under the predecessor statutes to section 850, the personal property disputes also involved assets unrelated to the administration of the estate.  In *Scott*, *supra*, 197 Cal.App.3d 913, the probate court adjudicated a section 851.5 petition filed by the wife of the decedent to recover personal property which she alleged a third party had coerced and intimidated the decedent into transferring to the third party.  (*Id.* at pp. 915–916.)  In *Estate of Blair* (1988) 199 Cal.App.3d 161, the court adjudicated a section 851.5 petition brought by decedent's estate seeking one-half of the net proceeds from the sale of a family residence.  (*Id.* at pp. 164–165.)  In *Estate of Peterson* (1994) 28 Cal.App.4th 1742, the probate court adjudicated a petition under section 9860 disputing title and ownership of annuity contracts, the family residence, and funds held in a money market account.  (*Id.* at pp. 1744–1746.)

Parker's section 850 petition did not seek any personal property akin to the property interests customarily litigated under section 850.  Her petition sought "an order compelling Ms. Schwarcz to transfer to Ms. Parker all communications between Ms. Schwarcz and any person related to Ms. Schwarcz's service as temporary conservator of Ms. Parker, as well as all

14

other documents related to Ms. Schwarcz's service as temporary conservator of Ms. Parker's estate." The petition elaborated that the communications and documents could be broken down into multiple categories including (but not limited to) communications between Schwarcz and her attorney as well as non-attorneys, as well as "[d]ocuments related to the temporary conservatorship of the estate, such as medical records, financial records, or notifications."

The purported personal property in dispute thus was made up of communications and documents generated or obtained during Schwarcz's service as temporary conservator reflecting information about how she administered the conservatorship estate. Such items are clearly distinct from the types of assets courts have transferred or conveyed in *any* petition decided under section 850 or its predecessor statutes. For example, they were not the type of items to which one held title. They had no inherent value that could have funded the conservatorship estate or paid down Parker's debts. They were not items Parked had previously owned or to which she claimed an ownership interest separate and apart from the process of trust administration. Simply put, these were not the type of property interests the Legislature intended the probate courts to address in enacting section 850 and its predecessor statutes and not the proper subjects of a section 850 petition.

### 2. Parker Presents No Persuasive Authority that Section 850 Authorizes Her Petition for the Return of Estate Administration Documents.

Parker raises additional arguments, none of which we find persuasive.

Parker repeatedly contends her petition seeks "the return of assets at the termination of the temporary conservatorship" and argues that the since

the documents "were obtained or created by Ms. Schwarcz solely in her capacity as temporary conservator of the estate," they "belong to the conservatorship estate." We reject Parker's characterization as she cites no authority to support the characterization of such documents as estate assets subject to a section 850 petition. (*In re S.C.* (2006) 138 Cal.App.4th 396, 408 ["To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.] When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' "].)

Further, notwithstanding Parker's characterization, her section 850 petition reads like a civil discovery request for production of documents, not a claim for the recovery of assets improperly excluded from the conservatorship estate. Just because Parker says they are assets does not make them so. (See *Bloniarz v. Roloson* (1969) 70 Cal.2d 143, 149 ["The nature of an action and the issues involved are to be determined, not from the appellation given the pleading, but from the facts alleged and the relief that they support."].) Even at the hearing on the petition, Parker's counsel acknowledged that it "may be the case" that Parker's requests "may be better phrased as discovery requests," rather than requests for the return of property. In her appellate brief, too, Parker cannot avoid the distinction between the documents she seeks and the assets in her estate. Noting her and GSS's new responsibility "for managing the assets and liabilities that were once part of the temporary conservatorship," she explains the "receipt of [the requested] documents is necessary to facilitate the administration of these assets and liabilities." This statement recognizes the documents sought are distinct from her estate's assets.

16

Parker also argues that since she or GSS are "now responsible for managing the assets and liabilities that were once part of the temporary conservatorship," they are "entitled to the documents" under the rationale of *Moeller v. Superior Court* (1997) 16 Cal.4th 1124 (*Moeller*), *Fiduciary Trust Internat. of California v. Klein* (2017) 9 Cal.App.5th 1184 (*Fiduciary Trust*), and *Stine v. Dell'Osso* (2014) 230 Cal.App.4th 834 (*Stine*).  Parker's reliance on these cases as support for her section 850 petition is unavailing.  Parker explains that these cases recognize that a successor trustee had access to the former trustee's communications to allow for the effective continuous administration of a trust estate and that such fiduciary obligations extended to conservators.  As applied to the appeal before us, these cases place the cart before the horse since they do not address the threshold issue of whether section 850 may be used to request such documents from a predecessor conservator in the first place.  (See generally *Moeller*, *supra*, 16 Cal.4th 1124, *Fiduciary Trust*, *supra*, 9 Cal.App.5th 1184, *Stine*, *supra*, 230 Cal.App.4th 834.)

In addition, these cases do not even suggest that section 850 is a proper way to obtain such documents, since section 850 was not used by any successor fiduciary to obtain the documents sought from the predecessor.  In *Moeller*, *supra*, 16 Cal.4th 1124, the dispute over documents between former and successor trustees related to the predecessor's administration of the trust and arose in a "proceeding for an accounting" in which the successor trustee utilized discovery and demanded production of documents and records.  (*Id.* at p. 1128.).  In *Fiduciary Trust*, *supra*, 9 Cal.App.5th 1184, the dispute over trust documents also appears to have arisen in the context of a trust accounting, and there is no indication the successor trustee sought trust documents through section 850.  (*Id.* at p. 1191–1192.)  The court's analysis of

17

the standard of review for motions to compel discovery and law "where discovery is withheld" suggests the parties' conflict arose in a discovery dispute and not a dispute under section 850. (*Id*. at pp. 1194–1195.) *Stine, supra*, 230 Cal.App.4th 834, which Parker cites because it applied the reasoning of *Moeller* to the conservatorship context, does not involve a document or property dispute. (See *id*. at pp. 837–847.) In that case, the court considered whether a successor conservator could pursue a malpractice claim against the attorneys for the predecessor conservator. (*Ibid*.)

In sum, this trio of cases are inapposite to the threshold issue before us. Even if they support Parker's view that she is entitled to certain documents from Schwarcz related to the administration of the temporary conservatorship estate albeit using another procedure to request them[6] – issues we do not reach – these cases decidedly do not establish that section 850 is an acceptable or appropriate way to obtain those documents.

Finally, Parker's reliance on *Conservatorship of Romo* (1987) 190 Cal.App.3d 279 (*Romo*), is also unavailing. There, prior to being injured in a car accident, Doris Romo had executed a will disposing of an estate worth approximately $1 million. (*Id*. at p. 281.) In 1981, she executed another will and an inter vivos trust naming her daughter trustee. (*Ibid*.) The daughter later petitioned the probate court to be appointed conservator of her mother's person and estate. (*Ibid*.) Other family members opposed the petition, Wells Fargo Bank was named conservator, and proceedings were initiated in the

---

[6]     We need not address other avenues available to Parker, if any, to obtain or access these items in order to conclude that such items fall outside the parameters of section 850. We do note that cases such as *Moeller* and *Fiduciary Trust* suggest requests for such communications and documents related to a fiduciary's administration of a trust estate may be litigated in the course of an accounting. (See *Moeller, supra*, 16 Cal.4th at p. 1128; *Fiduciary Trust, supra*, 9 Cal.App.5th at p. 1191.)

conservatorship under section 2520 (the predecessor statute to section 850) to set aside the 1981 will and the inter vivos trust on the ground that Doris Romo was incompetent when they were executed.  (*Id.* at pp. 281, 283.) Responding to the argument that the probate court lacked jurisdiction to set aside the 1981 will and inter vivos trust, the court noted, "Probate Code section 2520 expressly gives that court jurisdiction to make an appropriate order relating to property claimed by a conservator or conservatee, and by another."  (*Id.* at p. 283.)  Hence, even if *Romo* establishes a conservatee may assert a claim for property, it provides no support for the view that communications and documents from the administration of a conservatorship constitute valid property interests properly adjudicated under former section 2520, or section 850.

### 3.    Conclusion

We decline to adopt Parker's construction of "personal property" as used in section 850 to encompass communications and documents from the administration of her temporary conservatorship estate, as neither the terms nor the legislative history of the statute, nor any case law on the matter, indicates that these are the types of personal property interests the Legislature intended probate courts to resolve under section 850 and its predecessor statutes.  We reach no conclusion as to whether Parker may be entitled to any of the communications and documents she seeks, or the attendant issues of privilege, if sought in another manner.

### B.    Declaratory Relief

Parker contends the trial court erred in denying her claim for declaratory relief as she "met all the requirements for declaratory relief" and asserted a "*bona fide* controversy" over "the right to possess certain personal

19

property" under the terms of the parties' settlement agreement or based on Schwarcz's obligations as a former fiduciary.

"The propriety of a trial court's denial of declaratory relief involves a two-prong inquiry. The first prong concerns whether ' "a probable future dispute over legal rights between parties is sufficiently ripe to represent an 'actual controversy' within the meaning of the statute authorizing declaratory relief (Code Civ. Proc., § 1060), as opposed to purely hypothetical concerns." ' [Citation.] This is a ' "question of law that we review de novo on appeal." ' [Citations.] The second prong concerns ' "[w]hether such [an] actual controversy *merits* declaratory relief as necessary and proper (Code Civ. Proc., § 1061)." ' [Citations.] This is a matter within the trial court's sound discretion ' "except in the extreme circumstances where relief is 'entirely appropriate' such that a trial court would abuse its discretion in denying relief . . . or where relief would *never* be necessary or proper." ' (*Artus v. Gramercy Towers Condominium Assn.* (2018) 19 Cal.App.5th 923, 930–931.)

Here, Parker set forth her declaratory relief claim in a total of four paragraphs: (1) the first paragraph incorporated all prior paragraphs of the pleading (all regarding her request for the property pursuant to section 850); (2) the second stated there was a dispute between the parties as to whether Parker was entitled to receive the communications and documents sought in the petition; (3) the third asserted the general principle that declaratory relief was proper to obtain a judicial clarification of the parties rights and obligations under the law, citing to a case addressing whether declaratory relief was available against state agencies and officials regarding the manner in which they approved timber harvest plans (*Californians for Native Salmon etc. Assn. v. Department of Forestry* (1990) 221 Cal.App.3d 1419, 1422, 1427); and (4) the fourth asserted Parker "[sought] an order clarifying whether she

20

or, in the alternative, GSS, [was] entitled to receive the documents and communications sought through this petition" as well as an order compelling Schwarcz to provide such documents to Parker or GSS. Neither Schwarcz's written opposition to nor Parker's written response to the opposition discussed the declaratory relief claim further.

At the hearing, Parker's counsel told the court Parker had in addition to its section 850 petition a declaratory relief claim which "would not be confined by the state regarding the constraints Parker receives with respect to the Probate Code [section] 850." The court explained as follows: "With regard to your petition for declaratory relief, let's say we take it outside of the 850 petition realm, I'm not inclined to grant such a request under these circumstances. I think the request is overly broad, and I do think this is really a request to get discovery that you believe your client is entitled to, but I just don't think she's entitled to [it] in this instance. . . . ¶ In this situation, I just don't think 850 applies, and I'm not inclined to grant the declaratory relief request. I just don't think this is procedurally the way to go about it." The declaratory relief claim was not addressed in the court's written order.

Parker is correct that the court did not clearly address the grounds upon which it denied the request for declaratory relief. She goes on to fault the trial court for failing to "address [her] entitlement to the documents under the terms of the settlement" and "the former fiduciary's legal obligation to turn the documents over." However, beyond asserting her right to declaratory relief, Parker never raised such arguments in the probate court in support of her declaratory relief claim. The entirety of her argument on the record in support of the declaratory relief claim was her reminder to the court at the hearing of the existence of the claim. She did not discuss either of the prongs of the declaratory relief analysis in any filing. She gave no

21

indication in her petition that the basis for her declaratory relief claim was in any way independent of section 850.[7]  Having presented no clear arguments to the probate court in support of her declaratory relief claim, Parker cannot now fault the court for the quality of its response.  Nor can she raise these arguments for the first time on appeal (*Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1038 ["It is axiomatic that arguments not raised in the trial court are forfeited on appeal."]), and we deem them forfeited.

## DISPOSITION

The order denying the petition is affirmed.  The parties are to bear their own costs on appeal.

---

[7]     In the absence of any such discussion, the probate court's ruling on Parker's claim for declaratory relief, which appears to regard her declaratory relief claim as wholly derivative of her failed section 850 claim, appears entirely reasonable.  (See *Ball v. FleetBoston Financial Corp.* (2008) 164 Cal.App.4th 794, 800 [notwithstanding the existence of an actual controversy, a claim for declaratory relief that is " 'wholly derivative' " of a failed claim cannot stand].)

_____

Petrou, J.

WE CONCUR:


_____

Tucher, P.J.


_____

Fujisaki, J.


A165163

Trial Court:       Marin County Superior Court

Trial Judge:      Hon. Kelly Simmons

Counsel:          Ragghianti Freitas, Paul B. Gruwell; Sheppard Mullin, Steven P. Braccini, for Respondent.

Hartog, Baer, Zabronsky & Verriere, Andrew R. Verriere, for Petitioner and Appellant.

Law Offices of Woodford G. Rowland, Woodford G. Rowland, for Real Part in Interest.